MARY CAREY, DEFENDANT IN ERROR, v. D. WOLFF & COMPANY, PLAINTIFF IN ERROR.

Argued June 23, 1905—Decided March 5, 1906.

1. In an action of trespass for wrongful seizure of the plaintiff's household goods by an officer under a writ of attachment against her husband, proof that the president of the defendant corporation, the plaintiff in the attachment, guarded the goods after the seizure, with knowledge of the plaintiff's claim, that the general manager of the corporation, upon complaint made to him, stated that he had done this thing many times, and must take all the furniture there was to make himself safe; that the general manager assumed some control over the goods while stored in a warehouse, with knowledge that some of the goods belonged to the plaintiff, are evidence of subsequent consent to the wrongful seizure by the officer sufficient to sustain the action.

2. Statements of the general manager of a corporation made at its office, of which he was apparently in charge, as a consequence of which proceedings in an action by the corporation were actually stayed, accompanied by evidence of his subsequent acting with authority in the matter, are admissible in evidence against the corporation.

3. The issue of an attachment against a man for a debt which the plaintiff in attachment, a corporation, must be held to have known had no existence in fact, the seizure under that writ of the household goods and wearing apparel of his wife by the officer, the subsequent assent of the executive officers of the corporation to the seizure of the wife's property, their refusal to release it, and their subsequent assumption of authority over the property, justify an award of punitive damages in an action of trespass by the wife against the corporation.

On error to Essex Circuit.

For the plaintiff in error, Cecil H. McMahon (Riker & Riker on the brief).

For the defendant in error, Chauncy H. Beasley.

The opinion of the court was delivered by

SWAYZE, J. This is an action of tort to recover damages for the wrongful seizure of the plaintiff's household goods. The declaration counts in trespass. The goods were actually

seized by constables under writs of attachment issued at the suit of the corporation, present defendant, against the plaintiff's husband. It was necessary for the plaintiff, in order to hold the defendant in this form of action, to prove either prior authority from the corporation to the constable to seize the goods of the plaintiff or a subsequent assent with knowledge of the facts. The learned trial judge so charged. The complaint of the plaintiff in error in this respect is that there was no evidence to justify the jury in inferring either prior authority or subsequent assent. We think, however, that there was evidence of subsequent assent. There was undisputed proof that, upon the seizure in Newark, the constable telephoned to the defendant that it had better take charge of the goods; that, in response to that telephone message, the president of the defendant went to the residence of the plaintiff, told her husband that he had seized all the goods that were in the house, and was there to protect them and see that they went to the warehouse; that Mr. Carey then told the president that some of the goods belonged to the plaintiff, and that the president replied that he knew what he was doing. The president was not called to contradict this testimony. The plaintiff herself immediately made complaint to the general manager of the defendant. She says: "He told me he had done this thing many times; that he must take the whole business, all the furniture there was, mine and his own, to make himself safe; and I asked him if he could take all my things, and if the state allowed such things as that, to take everything I had and turn me out in the world, two old people; and that is the only way I knew how to make my living, was keeping boarders; and he said, yes, he had done it before; he knew what he was doing and he wasn't going into this thing blind." Wolff himself, the general manager, says she asked what he was going to do with the furniture, and that he replied, "Well, I don't really know what we can do different than the usual process, unless there is a way of settlement that can be made." The defendant, through Wolff, after the goods were in a warehouse, assumed to give the plaintiff permission to get some of her wearing apparel, com-

plained that she had removed two watches, and demanded their immediate return, and directed the owner of the warehouse to make the receipt in the name of one of the constables, but to send the same to the defendant.

Objection was made to the admission of Wolff's statements as not binding the corporation, but if there was not sufficient proof of his agency at the time the testimony was admitted, his own evidence subsequently given made it quite clear that his authority was such that his admissions were evidence against the corporation. Wolff was the general manager; the conversation took place in the office of the company of which he was apparently in charge, and as a consequence, proceedings in the attachment suit were stayed; he subsequently evinced the authority necessary to permit some of the goods to be taken from the warehouse. His own testimony was not subject to the objection that it was hearsay, and was sufficient in itself to warrant the inference that he was the agent of the defendant in charge of this business, if indeed it did not compel that conclusion. We think the testimony as to Wolff's statements, to which exception was taken, was properly admitted.

It is said that there was error in admitting the testimony of the manager of the warehouse that the account for storage was originally charged to the defendant. The objection was made upon the distinct ground that the evidence was not admissible in an action of trespass, and the court held that the evidence was competent against that objection. In view of the testimony already adverted to as to the assumption by the defendant of authority to control the goods in the warehouse, we think the evidence was admissible. At any rate, the ground of objection urged was not tenable.

Complaint is also made of the admission of testimony as to the contents of a lost letter from the plaintiff to the defendant, the receipt of which was denied. There was evidence of its having been mailed, and under the circumstances the evidence of its contents was admissible.

The most serious difficulty we have found is that the judge allowed the jury to award punitive damages. He said:

"Another question in the case is as to whether the evidence, in case you find for the plaintiffs, justifies the imposition of damages by way of example or punishment, punitive damages, which are sometimes, though rarely, given in extreme cases— cases of malice or fraud, gross negligence, recklessness, wanton or malicious conduct, violence, malicious abuse of process, wanton malice and insult, outrage to the plaintiff's feelings. In such cases, which, as you see by the strength of the language that is used, are extreme cases, not ordinary cases, it is left to the jury to say how much damages shall be awarded by way of example over and above the value of the property. I do not know that I have the right to take this question away from the jury, but I suggest to you that this branch of the case should be dealt with with extreme caution, if you come to it at all. It is not enough to show that the property of B was levied on instead of the property of A; that would not be malice of itself. It is not enough to show that more goods were levied on than was necessary for the plaintiff's protection, as it turned out; that would not be enough. Actual malice, ill will, the disposition to abuse and injure, are the elements which justify the award of punitive damages—damages by way of punishment; and it should appear very clearly that the case calls for such treatment before damages of this class are awarded." This charge is sufficiently favorable to the defendant, if the case presented the question at all.

It has been held in this court that a corporation may be held liable for punitive damages. *Hoboken Printing Co.* v. *Kahn,* 30 *Vroom* 218. This rule was approved in the most recent case, *Peterson* v. *Middlesex and Somerset Traction Co.,* 42 *Vroom* 296, where the facts of the case were held not to justify an award of punitive damages. It was there said that those who are only consequentially responsible for the wrongdoer's acts on account of their relation to him were not liable unless they participated in the act, expressly or impliedly, by conduct authorizing or approving it, either before or after it was committed. Speaking of the Kahn case, the learned Chief Justice said that unless the act of the executive head of the corporation was treated as the act of the corporation, the rule

which holds a master liable to respond in punitive damages
for the malicious and wanton act of his servant, when that act
receives the approval of the master, has no application where
the master is a corporation, for it can only act through officers
selected to represent it. No case, he adds, can be found which
holds such a doctrine.

In the present case the unwarranted act of the constables
was ratified both by the president and the general manager of
the defendant; both, when their attention had been called to
the wrongful seizure of Mrs. Carey's property, evinced a de-
termination to hold it; some of that property was a woman's
wearing apparel, which the most eager seeker for fraud could
hardly imagine was the property of the husband; the amount
of property seized was nearly ten times the value of the claim
of the defendant against the husband, and that claim, as the
defendant must be held to have known, had no existence in
fact. The property was seized under an attachment at the
suit of the defendant for a debt. The alleged debt is sup-
posed to have arisen out of a contract for the hire of certain
goods; that contract provided for a weekly rent of $2; it was
admitted that the installments of rent were paid; no debt was
due at the time the attachment was issued. The fact that the
lease gave Mr. Carey the right to acquire title to the property
by paying $53 more did not create a debt for that amount.
He might exercise his option to purchase or not; he owed no
money as long as he had paid the installments of rent due
under the lease. The fact that he was about to remove the
goods in violation of the agreement did not create a debt, for
the contract expressly provided what the defendant's remedy
should be; it authorized the defendant to enter the premises
and seize and take the goods mentioned in the lease, and pro-
vided that Carey should forfeit as damages all he had paid,
and that the defendant should not claim any further payments
on account of the lease. The issue of an attachment against
all the property of a man for a non-existent debt; the seizure
by the constable under that writ of the wife's property, and
the assent of the executive officers of the company to that
tortious act; the resistance by Wolff of Mrs. Carey's plea for

her property and his subsequent interference with the property; his demand for a return of two gold watches not covered by the lease and to which the defendant could have no claim—all evince a determination to force, by oppression, the plaintiff to pay a sum of money not due to the defendant in order to secure the release of all her household goods and wearing apparel. If a corporation is ever to be held for punitive damages, we think it should be so held in this case. The judge was properly cautious in his charge, and we find no error therein. The judgment should be affirmed, with costs.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, GARRETSON, PITNEY, SWAYZE, BOGERT, VREDENBURGH, VROOM, GREEN, GRAY. 10.

*For reversal*—DIXON, GARRISON. 2.