## COMMONWEALTH *vs.* FRANK DiStasio.

Middlesex.    March 4, 1936. — April 7, 1936.

Present: RUGG, C.J., FIELD, DONAHUE, LUMMUS, & QUA, JJ.

*Practice, Criminal,* Amendment, Trial on one only of several indictments, Examination of jurors, Examination as to mentality of defendant, Arraignment, Confession, Requests, rulings and instructions, New trial. *Jury and Jurors. Constitutional Law,* Self-incrimination. *Evidence,* Competency, Relevancy and materiality, Photograph, Confession, Presumptions and burden of proof, Of motive. *Witness,* Competency. *Arrest.*

Under G. L. (Ter. Ed.) c. 277, § 35A, there was no error in allowing an indictment charging the murder of "John Doe," whose true name was stated in the indictment not to be known to the grand jury, to be amended on motion by the district attorney for the Commonwealth by substituting the true name after its discovery.

One, placed at the bar for trial only on an indictment charging him, jointly with another, with murder, has no right to insist that he and the codefendant be tried at the same trial upon pending indictments charging him alone with the murder, the codefendant alone with being accessory before the fact, and the two jointly with conspiracy to defraud an insurance company.

Under G. L. (Ter. Ed.) c. 234, § 28, a defendant in an indictment cannot examine jurors as of right beyond the statutory questions nor otherwise than by questions asked by the trial judge.

No error was shown in the admission in evidence, at the trial of an indictment for murder, of a photograph of the body of the person killed; and of a bone taken from his body which was introduced to show the identity of the person killed with the person alleged to have been murdered.

An expert in mental disease who had examined a defendant charged with crime as provided by G. L. (Ter. Ed.) c. 123, § 100A, was not thereby disqualified to be a witness for the Commonwealth at the trial of the indictment.

Examination under G. L. (Ter. Ed.) c. 123, § 100A, of a person charged with crime did not compel him to furnish evidence against himself in violation of art. 12 of the Declaration of Rights, though he relied upon insanity as his defence.

A delay, in arraignment of one arrested on a warrant charging murder, from one o'clock in an afternoon until the next day while a criminal session of the Superior Court was not in session although a civil session was, did not as a matter of law render inadmissible in evidence a confession made by the defendant to officers holding him in custody during that period.

The mere fact that, after one arrested for murder had refused to admit the killing, his son, who was implicated in the crime, was brought before him so that he knew the son also was in custody, was not evidence that a confession, afterwards made by him, was the result of force, threats, or promises.

No error was shown at the trial of an indictment for murder in the expunging of parts of a confession by the defendant which implicated another, jointly indicted and tried with him, as also being guilty, but which were immaterial on the issue of his own guilt.

There being in evidence, at the trial of an indictment, not only a confession by the defendant but also other evidence of his guilt, no error was shown in a refusal by the trial judge to rule that the defendant could not be convicted on his alleged confession or admission only.

A defendant might be convicted of crime upon his confession without other evidence.

At the trial of an indictment for murder of one whose body had been burned so that identification was difficult, testimony respecting incidents which led to the discovery of evidence proving his identity was admissible.

To show motive for a murder alleged to have been committed as part of a scheme to defraud a life insurance company, evidence was admissible that the defendant's business was poor and that he was not in good financial condition.

Disposition of a motion for a new trial of an indictment for murder is discretionary with the trial judge.

INDICTMENT, found and returned on May 8, 1935, charging Frank DiStasio and Anthony DiStasio jointly with the murder at Hudson on May 6, 1935, of "John Doe, whose true name and a more particular description of whom . . . is to said Jurors unknown."

The indictment afterwards was amended, on motion of the district attorney in behalf of the Commonwealth, by striking out the reference to "John Doe" and by inserting as the name of the person murdered, "one Daniel Crowley." The defendants were tried together before *Brown*, J. A verdict of not guilty was ordered in favor of Anthony DiStasio. A verdict of guilty of murder in the first degree was returned against Frank DiStasio. His motion for a new trial was denied, and he filed an appeal with an assignment of errors.

*E. M. Shanley,* (*T. B. Shea* with him,) for the defendant.

*D. J. Doherty,* Special Assistant District Attorney, for the Commonwealth.

LUMMUS, J. The evidence in this case, including a con-

fession, warranted a finding of the following facts. The defendant's wife died on March 30, 1935, after a lingering illness, leaving the defendant and their only child, Anthony, a married man of twenty-three years. The defendant was engaged in a retail business which was practically managed by one Ethel Reilly, to whom, about a month after the death of his wife, he became engaged to be married. The business was not successful and the store was closed on May 4, 1935. On March 6, 1935, the defendant, who already had considerable life insurance as well as accident insurance, made formal application for a life insurance policy on his life for $5,000, with Anthony as beneficiary. The policy was issued on March 28, 1935. On March 20, 1935, the defendant negotiated with another company for a policy of $5,000 against accident to himself, with Anthony as beneficiary, the formal application for which was made on April 13, 1935. This policy became in force by delivery and payment by check for the premium on May 1, 1935.

In his confession, the defendant stated that when he procured this insurance he intended to "do away with someone" and "collect the insurance," and that he "got the insurance for that purpose." On April 5, 1935, the defendant bought for $1,508 an automobile of a 1934 model, which was paid for with $175 in cash, two old automobiles, and a note for $1,141.25, payable in sixty days. On April 15, 1935, the defendant bought an automobile of a less expensive make and of a 1929 model, for $100, paying $50 in cash and giving a note for $50. Both automobiles were registered in the name of the defendant, the former on April 8, 1935, and the latter on April 15, 1935.

On the evening of May 6, 1935, the defendant, driving his less expensive automobile, went into Boston, and at the Common invited a man, who had been drinking intoxicating liquor and whom he did not know, to take a ride. The unknown man got in, and they drove to the neighborhood of Hudson. There the defendant struck the unknown man on the head with an iron bar, and either left him in the automobile or put him into the automobile. There, while the unknown man was still alive though probably uncon-

scious, the defendant poured gasoline over him from a can which the defendant had carried on the journey, and set him afire. Death of course resulted. The face, the hands, and the feet were almost destroyed by fire, and the remainder of the body was much burned. The flames spread to the automobile. In the burned automobile was found a ring belonging to the defendant and inscribed with his initials, but he denied having left it there intentionally. After setting the unknown man afire, the defendant went on foot down the road and found his more expensive automobile, in which Anthony had followed the defendant from Boston. He and Anthony drove back to Boston, where the defendant took a room in a lodging house under the name of "Edward Morand, 64 Broad Street, New York."

The defendant and Anthony were indicted together on May 8, 1935, for the murder on May 6, 1935, of "one John Doe, whose true name and a more particular description of whom is to said Jurors unknown." Anthony had been questioned by the police on the day before. A warrant issued for the defendant on May 8, 1935, and he was taken into custody in Boston at about one o'clock in the afternoon. Afterwards, at about three o'clock in the afternoon of that day, the defendant was questioned in the office of the district attorney at Cambridge, and made a confession of the crime. On May 9, 1935, the defendant was arraigned at Cambridge, and entered a plea of not guilty.

Later the district attorney came into possession of ample evidence, which need not be recited, that the man, unknown at the time of the indictment, who was killed, was one Daniel Crowley, who had lived in a lodging house on Green Street in Boston, had once worked for the New York, New Haven and Hartford Railroad Company, and had last been seen on May 6, 1935. On October 17, 1935, the district attorney, on behalf of the Commonwealth, moved to amend the indictment by striking out the reference to the fictitious John Doe and by inserting, as the name of the person murdered, "one Daniel Crowley." This motion to amend was allowed, subject to the exception of the de-

fendant, on October 28, 1935, just before the trial began. The indictment as amended was served upon the defendant and Anthony (G. L. [Ter. Ed.] c. 277, § 65), and they were arraigned upon it. Each entered a plea of not guilty.

The defendant and Anthony were tried together for the murder of Daniel Crowley. At the conclusion of the evidence, a directed verdict of not guilty was returned in favor of Anthony. The defendant testified, but he neither admitted nor denied the killing. As is said in the defendant's brief, "The principal defence of the defendant, Frank Di Stasio, was that he was insane and out of his mind at the time through drink and never had any knowledge of the acts with which he was charged." The case against the defendant was submitted to the jury, and a verdict of guilty of murder in the first degree was returned. The case comes here by appeal, with a summary of the record, a transcript of the evidence, and an assignment of errors, under G. L. (Ter. Ed.) c. 278, §§ 33A–33G. *Commonwealth* v. *McDonald*, 264 Mass. 324.

1. The amendment of the indictment is assigned as error. By G. L. (Ter. Ed.) c. 277, § 35A, "Upon motion of the district attorney or prosecuting officer, the court may order the complaint or indictment amended in relation to allegations or particulars as to which the defendant would not be prejudiced in his defence." In *Commonwealth* v. *Cooper*, 264 Mass. 378, it was held that an indictment which, because of the omission of the words "wilfully and maliciously," set out no offence, could not be corrected by the insertion of those words. In *Commonwealth* v. *Snow*, 269 Mass. 598, 603 *et seq.*, it was held that an indictment for threatening injury to a person with intent to extort money could not be amended by naming a different person as the one to whom injury was threatened. It was said (page 606) that the statute "must be interpreted as authorizing amendments to indictments only as to matters of form and not as to matters of substance," and (pages 609, 610) that "One test to determine whether the change made was material is whether judgment of conviction or acquittal on the indictment as drawn would be a bar to a new indict-

ment drawn in the form in which it stood after the amendment." See also *Commonwealth* v. *McKnight,* 283 Mass. 35, 39.

Although the indictment in the present case did not as returned by the grand jury name or describe the man who had been murdered, except by a fictitious name (see *Commonwealth* v. *Crotty,* 10 Allen, 403; *Commonwealth* v. *Berley,* 254 Mass. 556, 558), in theory of law it required the defendant to answer for the murder of a particular man and no other. *Commonwealth* v. *Blood,* 4 Gray, 31. *Commonwealth* v. *Burke,* 14 Gray, 81. *Commonwealth* v. *Carroll,* 15 Gray, 412. *Commonwealth* v. *Dean,* 109 Mass. 349, 352. *Commonwealth* v. *Fields,* 119 Mass. 105. *Commonwealth* v. *Coughlin,* 182 Mass. 558, 564. *Commonwealth* v. *Coyne,* 207 Mass. 21. See also *Commonwealth* v. *Gedzium,* 259 Mass. 453, 460, 461. It is not denied that that man was the man found dead in the automobile. If that had been questioned, evidence that the killing of that man was the subject of the evidence presented to the grand jury would have been admissible to identify the offence charged. *Commonwealth* v. *Hill,* 11 Cush. 137. *United States* v. *Hecht,* 22 Fed. Rep. (2d) 264. *People* v. *Bogdanoff,* 254 N. Y. 16. See also *Attorney General* v. *Pelletier,* 240 Mass. 264, 308; *Rocco* v. *State,* 37 Miss. 357, 368, 369. The amendment merely supplied a description of the murdered man by his name, the omission of which would have vitiated the indictment had the name been known to the grand jury when the indictment was returned. *Commonwealth* v. *Stoddard,* 9 Allen, 280. *Commonwealth* v. *Hill,* 11 Cush. 137, 141. *Commonwealth* v. *Merrick,* 255 Mass. 510, 513. See also *Commonwealth* v. *Sheedy,* 159 Mass. 55; *Commonwealth* v. *Hebert,* 264 Mass. 571, 575. The amendment did not change the substance of the crime charged, but restricted the Commonwealth in its proof, to the advantage of the defendant, in much the same way as might have been done by specifications. *Commonwealth* v. *Farrell,* 105 Mass. 189. *Commonwealth* v. *Dill,* 160 Mass. 536. *Commonwealth* v. *Haywood,* 247 Mass. 16, 19. *Commonwealth* v. *Gedzium,* 259 Mass. 453, 457, 458. *Common-*

*wealth* v. *Snyder*, 282 Mass. 401, 412.   The allowance of
the amendment was not error.   *State* v. *Grossman*, 94
N. J. L. 301.   *State* v. *Tolla*, 43 Vroom, 515.   *State* v.
*Haapanen*, 129 Maine, 28.

The general validity of an indictment for murder in the
statutory form was settled by *Commonwealth* v. *Jordan*, 207
Mass. 259, 265–268.

2. There were other pending indictments against the de-
fendant and Anthony arising out of the same occurrence.
One charged the defendant alone with murder.   Another
charged Anthony as accessory before the fact.   A third
charged both with conspiracy to defraud an insurance com-
pany.   It is assigned as error that the judge put them to
trial on the indictment charging both with murder, with-
out putting them to trial on the other indictments.   The
asserted right to be tried on all the indictments at once
finds no support in *Commonwealth* v. *Slavski*, 245 Mass.
405, *Commonwealth* v. *Merrick*, 255 Mass. 510, *Common-
wealth* v. *Gallo*, 275 Mass. 320, *Commonwealth* v. *Snyder*,
282 Mass. 401, 410, *Commonwealth* v. *Millen*, 289 Mass.
441, 459–462, or *Commonwealth* v. *McKnight*, 289 Mass.
530, 539.   The pendency of other indictments did not
affect the responsibility of the defendant upon the one
upon which he was put to trial.   *Klous* v. *Judges of the
Municipal Court*, 251 Mass. 292, 294.   If he had the right
to one trial upon all indictments which he asserts, it would
afford him no defence in the case at bar, but could be in-
voked only when subsequently put to trial upon one of the
other indictments.

The defendant suggests that if Anthony had been tried
at the same time for some lesser offence as well as for mur-
der, the direction of a verdict in favor of Anthony upon
the indictment for murder would have left it possible to
convict him of a lesser offence, and would not have made
it necessary for the jury to convict the defendant if they
were determined to convict someone.   This is pure specu-
lation.   It might equally well be argued that if the jury
wished to convict Anthony, and were deprived of the op-
portunity by the action of the judge, the chances of a

verdict favorable to the defendant were increased. No right of the defendant was infringed. If, as is contended, the direction of a verdict in favor of Anthony was error, the answer is that where as in criminal cases liability is individual, one defendant is not aggrieved by an error in favor of another. *Warren* v. *Boston & Maine Railroad*, 163 Mass. 484.

3. G. L. (Ter. Ed.) c. 234, § 28, provides that "Upon motion of either party, the court shall, or the parties or their attorneys may under the direction of the court, examine on oath a person who is called as a juror therein, to learn whether he is related to either party or has any interest in the case, or has expressed or formed an opinion, or is sensible of any bias or prejudice, therein; and the objecting party may introduce other competent evidence in support of the objection. If the court finds that the juror does not stand indifferent in the case, another shall be called in his stead." By G. L. (Ter. Ed.) c. 278, § 3, "A person whose opinions are such as to preclude him from finding a defendant guilty of a crime punishable with death shall not serve as a juror on the trial of an indictment for such crime."

In this Commonwealth the examination of prospective jurors is "under the direction of the court," whether conducted by counsel, or, as is customary, by the judge. Seldom is it permitted to extend beyond the statutory questions.* *Commonwealth* v. *Cero*, 264 Mass. 264, 270, 271. Whether other questions shall be asked is discretionary with the judge. *Commonwealth* v. *Millen*, 289 Mass. 441, 475, 476. The statutory right of the objecting party to introduce "other competent evidence" of want of impartiality, implies that the prospective juror himself can be questioned only as the statute provides "under the

---

* Common forms of statutory questions in a capital case are shown in *Commonwealth* v. *Spencer*, 212 Mass. 438, 445, note, and *Commonwealth* v. *Cero*, 264 Mass. 264, 269. In the case at bar the question based upon G. L. (Ter. Ed.) c. 278, § 3, was in the following form: "Do you hold any opinions on the subject of capital punishment that would preclude you from finding a verdict of guilty if you were satisfied of guilt upon the evidence beyond a reasonable doubt?"

direction of the court." *Commonwealth* v. *Burroughs*, 145 Mass. 242, 243.

This salutary practice cannot be evaded by the simple expedient, adopted by the defendant in the case at bar, of filing a written challenge "to the array" on the ground that the prospective jurors had been deprived of impartiality by contact with police officers, and then offering to prove by an examination of the jurors themselves, though not by any other evidence, the existence of the disqualification alleged. If that were permitted, we should have, as the trial judge said, an "intolerable practice" of putting the prospective jurors on trial before the trial of an indictment begins. Similar attempts by defendants in capital cases, to insist upon examining jurors in an attempt to prove an impairment of impartiality resulting from interrogation by police officers, proved unsuccessful in *Commonwealth* v. *Cero*, 264 Mass. 264, 267 *et seq.*, 272 *et seq.*, and *Commonwealth* v. *Millen*, 289 Mass. 441, 475. It is conceded by the Commonwealth that it caused police officers to make a report, with respect to each prospective juror, as to his religious and fraternal affiliations and his condition with respect to marriage and children. This report was made available to the defendant before trial, by the voluntary action of the district attorney.

Questions asked prospective jurors by the judge disclosed that some, but not all, of them had been approached by a police officer and asked to give information needed for the report. Every prospective juror who testified that he had been so approached testified that he had not thereby been intimidated or influenced. As was said in *Commonwealth* v. *Cero*, 264 Mass. 264, 275, 276, "The questions which were put to the jurors or to members of their families and were answered by them are innocent of offence in themselves; and there is nothing in the record from which it can be found or inferred that those questioned were asked in an improper manner or that they answered under the impulsion and influence of the office which the interrogators held and visibly exercised; and there is no evidence that would warrant an assumption that the per-

son interviewed thought or acted otherwise than he would have had the questions been put by any one other than a police officer. . . . We are unable to see how such an investigation, properly conducted, can be interpreted, as the defendant contends, to be an 'attempt to influence the jurors in favor of the Commonwealth.' Nor do we see how a jury serving under such circumstances is necessarily not an impartial and indifferent jury." The case does not fall within *Sinclair* v. *United States,* 279 U. S. 749, or *Gideon* v. *United States,* 52 Fed. Rep. (2d) 427.

The mere possibility that a prospective juror thus interrogated may have become disqualified, does not give a party a constitutional right, by asserting such disqualification, to examine the prospective juror in the endeavor. to prove the assertion, beyond the limits set by G. L. (Ter. Ed.) c. 234, § 28. There is no constitutional right to introduce all evidence that may be logically relevant upon an issue raised. Considerations of social policy and practical expediency long ago produced a number of rules excluding from consideration facts which logically have some probative force. The policy and expediency of limiting the examination of prospective jurors to that provided for by our statute, is obvious.

The defendant now argues that even though the examination of the jurors was properly restricted to the statutory questions and such others as the judge in his discretion might permit, the defendant was entitled to have those questions put by his counsel rather than by the judge. This point is not well taken. The judge has the option, either to ask the statutory questions himself, or to permit the parties or their attorneys to do so. The practice has been for the judge to undertake the examination. *Commonwealth* v. *Gee,* 6 Cush. 174, 177, 178. *Commonwealth* v. *Thompson,* 159 Mass. 56, 58.

4. The defendant assigns as error the admission in evidence of a photograph of the body of the deceased, and of the left femur taken from the body. The latter was admitted for its tendency to show by a partly healed break in the bone, that the deceased was Daniel Crowley, who had suffered a broken left femur so recently that the bone

probably had not fully healed.    The defendant contends that the evidence was intended by the Commonwealth to excite horror and thus to prejudice the jury against him. This assignment requires no discussion.    It is fully covered by the recent cases of *Commonwealth* v. *Osman,* 284 Mass. 421, 423, and *Commonwealth* v. *Clark,* 292 Mass. 409, 410.

5. One Myerson, an expert in mental disease, was employed by the department of mental diseases, as required by G. L. (Ter. Ed.) c. 123, § 100A, to examine the defendant "with a view to determine his mental condition and the existence of any mental disease or defect which would affect his criminal responsibility."    The department is required to "file a report of its investigation with the clerk of the court in which the trial is to be held, and the report shall be accessible to the court, the probation officer thereof, the district attorney and to the attorney for the accused."    A physician making such an examination is paid $4, together with twenty cents for each mile travelled one way.    § 73.    In *Commonwealth* v. *Devereaux,* 257 Mass. 391, 396, it was said: "The examination is required in order that no person so indicted may be put upon his trial unless his mental condition is thereby determined to be such as to render him responsible to trial and punishment for the crime charged against him, and that he has no mental disease or defect which interferes with such criminal responsibility."

The defendant contends that Myerson, having examined the defendant under the statute, was not a competent witness for the Commonwealth on the issue of insanity when raised at the trial.    He stood in no confidential relation towards the defendant.    The possibility that his report in favor of criminal responsibility might be challenged and that he might then be called as a witness by the Commonwealth does not in our opinion create such a bias as to interfere with the impartiality desired in his examination.    In *Commonwealth* v. *Millen,* 289 Mass. 441, 481, 482, the examining physician testified as an expert.

There is nothing in the contention that by the examination the defendant was "compelled to . . . furnish evidence

against himself," in violation of art. 12 of the Declaration of Rights. *Commonwealth* v. *Millen, supra.* The defendant was not required by law nor by any mode of compulsion to talk with the examiner, nor to answer his questions. The notion that a person accused may not be subjected to the observation of witnesses and jurors is a perversion of the rule against self-crimination. *Commonwealth* v. *Millen,* 289 Mass. 441, 481, 482. *People* v. *Gardner,* 144 N. Y. 119, 127 *et seq.* *People* v. *Truck,* 170 N. Y. 203, 212. *Holt* v. *United States,* 218 U. S. 245, 252, 253. *United States* v. *Kelly,* 55 Fed. (2d) 67. Wigmore, Evidence, (2d ed.) §§ 2263, 2265.

6.\* It is true that when the defendant was arrested on the warrant, it was the duty of the arresting officers to bring him without delay before the court. *Tubbs* v. *Tukey,* 3 Cush. 438. *Commonwealth* v. *Roark,* 8 Cush. 210, 213. *Brock* v. *Stimson,* 108 Mass. 520, 521. *Keefe* v. *Hart,* 213 Mass. 476. But the criminal session was closed for the day before the defendant was brought to Cambridge shortly after his arrest. The fact that civil sessions were still open, is immaterial. G. L. (Ter. Ed.) c. 212, §§ 7, 20, 29. No undue delay was shown. If any had been shown, the confession obtained during such delay would not thereby have been rendered inadmissible. *Commonwealth* v. *Mercier,* 257 Mass. 353, 375, 376. *Commonwealth* v. *Tibbetts,* 157 Mass. 519. *Commonwealth* v. *Wilkins,* 243 Mass. 356. *Commonwealth* v. *Donnelly,* 246 Mass. 507. The confession was presumptively not the result of force, threats or promises, and there was no evidence to rebut the presumption. *Commonwealth* v. *Clark,* 292 Mass. 409, 411. The fact that after the defendant had refused to admit the killing, police officers caused Anthony to be brought before the defendant, so that the defendant realized that Anthony

---

\* The assignment of error to which this paragraph of the opinion relates was as follows: "34. The defendant assigns as error the ruling of the court in permitting the introduction into evidence of an alleged confession of the defendant, on the grounds that it was not voluntary and that it was obtained at a time when the defendant was unlawfully restrained by the district attorney, state and municipal police officers, and unlawfully subjected to questioning by them, whereas, if restrained at all, he should have been arraigned before the court."— REPORTER.

also was in custody, was not evidence that the subsequent confession was the result of force, threats or promises.

7. A few questions and answers in the defendant's confession as taken stenographically related only to the question whether Anthony discussed with the defendant the confessed intention of the latter to kill someone for the purpose of defrauding the insurers. They did not qualify or explain any questions and answers relative to the conduct of the defendant himself. If admitted in evidence without limitation they would have been assertions of the defendant, not under oath, tending to inculpate Anthony. Often in trials of several persons it is impracticable to withhold from the jury any part of a confession or admission of one defendant which involves a statement as to the misconduct of another. In such a case the proper and usual course is to let the jury hear all, and trust them to obey the instruction of the court not to give weight to the confession or admission against any defendant other than the one making it. *Commonwealth* v. *Millen,* 289 Mass. 441, 459, 460. But where, as in the present case, the part affecting another defendant is readily separable, and clearly unnecessary to the completeness of the confession or admission as to its maker, the course adopted by the trial judge, of withholding the immaterial portion from the jury, is not improper. See *Commonwealth* v. *Antaya,* 184 Mass. 326; Wigmore, Evidence, (2d ed.) § 2100.

The defendant now argues that he was prejudiced by the omission of these questions and answers because if read to the jury they could have been made the foundation of an argument that only a man who did not appreciate right from wrong would have made statements inculpating a dearly beloved son. But at the trial no such point was clearly made. Counsel for the defendant insisted that the whole confession be read to the jury "for the purpose of the jury drawing their own conclusions . . . as to the method in which the confession was obtained, and . . . as to the mental condition of the defendant, as appears from the confession itself, in answer to questions propounded to him." When the judge said that the part which he

proposed to omit "is something the exclusion of which doesn't injure your client in the slightest, and if included might be very disadvantageous to the other one," and that "I don't see that there is anything in there that could be of benefit to your client to have read," counsel for the defendant pointed out no tangible way in which the part omitted could benefit his client, but contented himself with a general exception. The defendant, in our opinion, is not entitled to a new trial because of the course taken by the trial judge. *Anderson* v. *Beacon Oil Co.* 281 Mass. 108. *Rothwell* v. *First National Bank of Boston,* 286 Mass. 417, 422. *United States* v. *Atkinson,* 297 U. S. 157. *Brown* v. *Mississippi,* 297 U. S. 278.

8. The defendant assigns as error the refusal of the judge to instruct the jury that "the defendant cannot be convicted on his alleged confession or admission only." There was other evidence which supplemented and corroborated the confession, and the request violated the familiar rule that a judge cannot be required to rule upon the legal effect of a fragment of the evidence, taken by itself. *Barnes* v. *Berkshire Street Railway,* 281 Mass. 47. *Commonwealth* v. *Polian,* 288 Mass. 494, 500. Besides, no such artificial quantitative rule as is expressed in the ruling requested, has any place in the law of this Commonwealth. *Commonwealth* v. *Killion,* 194 Mass. 153. *Commonwealth* v. *Zelenski,* 287 Mass. 125, 130. Compare the somewhat similar question whether a conviction may be had on the uncorroborated testimony of an accomplice, which in this Commonwealth is simply a question of fact. *Commonwealth* v. *Leventhal,* 236 Mass. 516, 522. *Commonwealth* v. *Gwizdoski,* 284 Mass. 578, 580.

9. After testifying that in the burned automobile there was found an unburned notebook, the writing in which he was able to read, a lieutenant of police was allowed to testify that he caused the contents of the notebook to be published in the newspapers, and in consequence of the finding and publication he interviewed persons at the New York, New Haven and Hartford freight sheds, examined records there, and went to the lodging house on Green

Street in Boston already mentioned. The admission of this testimony is assigned as error. The contents of the notebook were not admitted in evidence. What was actually found as a result of the investigation was introduced in evidence, and furnished ample proof that the man killed was Daniel Crowley. The testimony, the admission of which is assigned as error, is of a sort constantly admitted in trials. Of itself it proved no material fact. If the jury drew from it the inference that something in the notebook furnished a clue to what was later found, that added nothing of evidential value to what was found, and therefore did the defendant no harm. The testimony simply made the discovery of the actual evidence of identity seem more natural and less mysterious. *Commonwealth* v. *Fagan*, 108 Mass. 471, does not apply.

10. Evidence that the business done by the defendant at his store had lessened, and that his pecuniary condition was not good, had a logical tendency to show a motive for crime. The case was not one in which an inference from his pecuniary condition was relied on as the means by which he might be selected among several as the person who probably committed the crime. In such a case the danger of injustice to a poor or distressed person may well halt the marshalling against him of even logical inferences. In this case the evidence in question was no more than a makeweight, as to a matter upon which the confession and circumstances furnished ample proof. The Commonwealth, as in *Commonwealth* v. *Cooper*, 264 Mass. 368, 376, *Commonwealth* v. *Bader*, 285 Mass. 574, 577, and *Richardson* v. *Travelers Fire Ins. Co.* 288 Mass. 391, 396, where similar evidence was held admissible, was trying to prove a plan to commit a crime in order to defraud insurers. See Wigmore, Evidence, (2d ed.) § 392. We think that the admission of the evidence was not erroneous.

11. The denial of the motion for a new trial was not error. As was said in *Commonwealth* v. *Osman*, 284 Mass. 421, 426, "the questions presented by the motion for a new trial were either questions of discretion for the trial court in its superintendence of the work of the jury, or questions

of law which could have been raised or in fact had been raised at the trial." See also *Commonwealth* v. *Millen*, 290 Mass. 406; *Squires* v. *Toye*, 291 Mass. 342; *Nicholas* v. *Lewis Furniture Co.* 292 Mass. 500, 504; *Nicoli* v. *Berglund*, 293 Mass. 426; *Kennedy* v. *Currier*, 293 Mass. 435. No abuse of discretion appears. It is hard to see how any different verdict could properly have been rendered.

There are other assignments of error, not already discussed, which have been argued either merely by reference to the assignments themselves, or not at all. All have been considered. But we think there is nothing in them to justify further extending this opinion.

*Judgment on the verdict.*