COMMONWEALTH vs. KEVIN T. BRENNAN.

COMMONWEALTH vs. FLOYD W. KNOCKEL.

Barnstable. Plymouth. April 5, 1982. — July 20, 1982.

Present: HENNESSEY, C.J., LIACOS, ABRAMS, NOLAN, & LYNCH, JJ.

Constitutional Law, Self-incrimination. Evidence, Breathalyzer test.
Motor Vehicle, License to operate, Operating under the influence.

The principles of Miranda v. Arizona, 384 U.S. 436 (1966), are applicable
to a charge of operating a motor vehicle while under the influence of
intoxicating liquor and thus a defendant's incriminating responses to
police questions concerning his alleged intoxication were, in the cir-
cumstances, properly suppressed from evidence. [775]
Breathalyzer tests and field sobriety tests, to which two arrested persons
submitted by reason of provisions in G. L. c. 90, § 24 (1) (f), requiring
automatic suspension of their motor vehicle operator's licenses if they
refused to do so, did not elicit testimonial or communicative evidence,
and thus the admission of the results of the tests in evidence at their
subsequent trials on charges of operating a motor vehicle while under
the influence of intoxicating liquor would not be precluded by the
privilege against self-incrimination, either as contained in the Fifth
Amendment to the United States Constitution [776-779], or as ex-
pressed in art. 12 of the Massachusetts Declaration of Rights [779-783].

COMPLAINT received and sworn to in the Second Barn-
stable Division of the District Court Department on March
30, 1981.

A motion to suppress evidence was heard by Welsh, J.

COMPLAINT received and sworn to in the Brockton Divi-
sion of the District Court Department on February 21, 1980.

Questions of law were reported to the Appeals Court by
Martin, J.

In each case the Supreme Judicial Court ordered direct
review on its own initiative.

John E. Warren (David S. Reid with him) for Kevin T.
Brennan.

*Kevin J. Reddington* for Floyd W. Knockel.

*Frederick V. Long & Robert M. Payton*, Assistant District Attorneys, for the Commonwealth.

HENNESSEY, C.J.  In these two companion cases we are asked to determine the applicability of the Fifth and Fourteenth Amendments to the United States Constitution and art. 12 of the Declaration of Rights of the Constitution of the Commonwealth, in circumstances involving the performance of breathalyzer and field sobriety tests administered for the purpose of determining whether a driver of a motor vehicle is under the influence of intoxicating liquors. We conclude that neither the Fourteenth Amendment nor art. 12 is violated by the administration of these tests.

The facts of these cases may be briefly stated.  The defendant Brennan was arrested and charged with operating a motor vehicle under the influence of alcohol, speeding, and failure to operate within marked lanes.  After being warned of his Miranda rights, he told the police officer, "I will not say anything or do anything until my lawyer is present." He was then taken to a police station, whereupon he was asked if he would agree to submit to a field sobriety test and a breathalyzer test.  He was advised that a refusal to take the breathalyzer test would result in the automatic suspension of his driver's license for ninety days.  See G. L. c. 90, § 24 (1) (f).[1]  Brennan agreed to and did take the breathalyzer

---

[1] General Laws c. 90, § 24 (1) (f), as amended through St. 1980, c. 383, § 2, commonly known as the implied consent law, provides: "Whoever operates a motor vehicle upon any [public] way . . . shall be deemed to have consented to submit to a chemical test or analysis of his breath or blood in the event that he is arrested for operating a motor vehicle while under the influence of intoxicating liquor . . . . If the person arrested refuses to submit to such test or analysis, after having been informed that his license . . . to operate motor vehicles . . . in the commonwealth shall be suspended for a period of ninety days for such refusal, no such test or analysis shall be made, but the police officer before whom such refusal was made shall immediately prepare a written report of such refusal . . . . [which] shall be endorsed by a third person who shall have witnessed such refusal . . . . [and] shall be sworn to under the penalties of perjury by the police officer before whom such refusal was made . . . . [It] shall set forth the grounds for the officer's belief that the person ar-

and field sobriety tests. The field sobriety tests consisted of the so-called finger-to-nose test, picking up coins from the floor, and walking a straight line. Brennan was also asked certain questions relating to his alleged intoxication, and to some of these he gave incriminating answers.

Before trial, Brennan moved to suppress "any and all statements and evidence attributed to" himself. At the hearing on the motion to suppress, Brennan testified that the consequence of license suspension for failure to submit to a breathalyzer test induced him to take the test. A District Court judge allowed his motion to suppress on the theory that the case was governed by the principles established in *Miranda* v. *Arizona*, 384 U.S. 436 (1966), as recently applied in *Edwards* v. *Arizona*, 451 U.S. 477 (1981). The Commonwealth then brought this interlocutory appeal pursuant to Mass. R. Crim. P. 15 (a) (2), 378 Mass. 882 (1979).

The defendant Floyd W. Knockel was also arrested and charged with operating a motor vehicle while under the influence of alcohol, and was also advised that his refusal to take a breathalyzer test would result in the suspension of his license. He took the breathalyzer test, and later, at a hearing on his motion to suppress the results of the test, he too testified that he submitted to the testing procedure in order to avoid the suspension of his license. The District Court judge, pursuant to Mass. R. Crim. P. 34, 378 Mass. 905 (1979), reported without decision to the Appeals Court the following questions of law: "1. Does Article XII of the Massachusetts Declaration of Rights require the suppression of the results of a scientific test which constitute evidence

---

rested had been driving a motor vehicle . . . while under the influence of intoxicating liquor, and shall state that such person had refused to submit to such chemical test or analysis when requested by such police officer to do so. Each such report shall be endorsed by the police chief . . . and shall be sent forthwith to the registrar. Upon receipt of such report, the registrar shall suspend any license . . . to operate motor vehicles issued to such person . . . for a period of ninety days."

The statute was upheld against a challenge under the due process clause of the Fourteenth Amendment in *Mackey* v. *Montrym*, 443 U.S. 1 (1979).

which was obtained as a result of the compulsion exerted through the mandatory loss of license provisions of M.G.L. c. 90 § 24 in the event of the failure of a person to submit to such a test. 2. Does Article XII of the Massachusetts Declaration of Rights preclude the compelled production of all 'evidence' of any type and nature, or is it limited to 'testimonial' evidence as is the Fifth Amendment to the United States Constitution" (footnote omitted). We transferred each case to this court on our own motion.

1. *The Privilege Against Self-incrimination Under the United States Constitution.*

We first dispose of any suggestion that the oral statements made by Brennan to the police are admissible. The statements were clearly elicited in violation of the requirements set forth in *Miranda* v. *Arizona*, 384 U.S. 436 (1966). See *Edwards* v. *Arizona*, 451 U.S. 477 (1981). See also *Commonwealth* v. *Brant*, 380 Mass. 876, cert. denied, 449 U.S. 1004 (1980); *Commonwealth* v. *Taylor*, 374 Mass. 426 (1978). Although the Commonwealth has offered no argument on this issue, we observe that several jurisdictions have held that *Miranda* does not apply to motor vehicle violations and other less serious crimes. See, e.g., *Clay* v. *Riddle*, 541 F.2d 456, 457-458 (4th Cir. 1976); *State* v. *Gabrielson*, 192 N.W.2d 792, 796 (Iowa 1971), cert. denied, 409 U.S. 912 (1972); *State* v. *Neal*, 476 S.W.2d 547, 555 (Mo. 1972); *State* v. *Macuk*, 57 N.J. 1, 15-16 (1970); *State* v. *Pyle*, 19 Ohio St. 2d 64, 66 (1969). See Annot., 25 A.L.R.3d 1076 (1969). However, we do not think that the relevant decisions of the United States Supreme Court support such a distinction. Accord, *Campbell* v. *Superior Court*, 106 Ariz. 542, 551-552 (1971); *State* v. *Lawson*, 285 N.C. 320, 328 (1974); *State* v. *Fields*, 294 N.W.2d 404, 409-410 (N.D. 1980); *State* v. *Darnell*, 8 Wash. App. 627, 628, cert. denied, 414 U.S. 1112 (1973). See also opinion of Justice White, dissenting from denial of certiorari in *Lewin* v. *New Jersey*, 444 U.S. 905 (1959). Accordingly, we hold that the oral statements made by Brennan were properly suppressed.

Brennan contends that his rights under the Fifth and Fourteenth Amendments were violated when the police asked him to take the breathalyzer and field sobriety tests after he expressed a desire to remain silent and to see his lawyer.[2] See *Miranda* v. *Arizona, supra* at 473-474. The privilege of the accused not to be compelled to be a witness against himself, however, protects only against the compulsion of "communications," or "testimony." It does not bar compulsion "which makes a suspect or accused the source of 'real or physical evidence.'" *Schmerber* v. *California,* 384 U.S. 757, 764 (1966). In *Schmerber,* the United States Supreme Court held that the compulsory taking of blood for analysis of its alcohol content and its use in evidence did not violate the defendant's Fifth Amendment privilege against self-incrimination.

With respect to the breathalyzer test, we see no distinction between this type of test and the blood test involved in the *Schmerber* case. A breathalyzer test is no more communicative or testimonial than a blood test, and it is certainly a less intrusive method of obtaining evidence. The fact that the breathalyzer test requires a greater degree of participation is not a distinguishing factor, as is suggested. Accord, *State* v. *Driver,* 59 Wis. 2d 35 (1973). Other forms of compelled production of evidence involving greater degrees of participation than that required by a breathalyzer test have been held not to violate the privilege. See *United States* v. *Dionisio,* 410 U.S. 1 (1973) (voice exemplars); *Gilbert* v. *California,* 388 U.S. 263 (1967) (handwriting

---

[2] The issue whether the evidence obtained by the administration of the breathalyzer and field sobriety tests was secured in violation of the Fourth Amendment was not briefed or argued, and we do not address it. See *Commonwealth* v. *Angivoni,* 383 Mass. 30, 31 (1981); *Schmerber* v. *California,* 384 U.S. 757, 766-772 (1966). Also, we note that neither defendant has argued that he was entitled under the Sixth and Fourteenth Amendments to the assistance of counsel at the time of the arrest. Our cases make it clear that the Sixth Amendment right to counsel does not apply at the time of an arrest. *Commonwealth* v. *Mandeville, ante* 393, 401 (1982). *Commonwealth* v. *Smallwood,* 379 Mass. 878, 883-885 (1980). See *Kirby* v. *Illinois,* 406 U.S. 682, 688 (1972).

exemplars); *Holt* v. *United States*, 218 U.S. 245 (1910) (modelling of a blouse). Numerous cases from other jurisdictions have also concluded that a breathalyzer test does not produce evidence of a testimonial nature.[3] Accordingly, we conclude that the protections afforded by the Fifth Amendment are not available to an accused who submits to a breathalyzer test.

A somewhat closer question is presented with respect to field sobriety tests. Such tests enable an observer to draw an inference as to guilt or innocence directly from the subject's ability to perform the acts required of him. Arguably, the suspect's actions have, in the circumstances, a communicative quality to them. This has led at least one court to conclude that field sobriety tests are subject to the protections afforded by the Fifth Amendment. See *People* v. *McLaren*, 55 Misc. 2d 676, 680-681 (N.Y. Dist. Ct. 1967). Nevertheless, upon analysis of the pertinent Supreme Court cases, we agree with the decisions of the great majority of other jurisdictions which hold that field sobriety tests do not involve testimonial or communicative evidence.[4]

The United States Supreme Court has consistently indicated that evidence that is "testimonial" or "communicative" in nature is that which reveals the subjective knowledge or thought processes of the subject. In *Schmerber, supra* at 761 n.5, the Court referred to a nod or head-shake as "testimonial," and indicated that "[s]ome tests seemingly directed to obtain 'physical evidence,' for example, lie detector tests measuring changes in body function during

---

[3] E.g., *State* v. *Mulack*, 40 Ill. 2d 429 (1968); *State* v. *Macuk*, 57 N.J. 1 (1970); *State* v. *Kenderski*, 99 N.J. Super. 224 (1968); *People* v. *Gielarowski*, 58 Misc. 2d 832 (N.Y. Dist. Ct. 1968); *Heer* v. *Department of Motor Vehicles*, 252 Or. 455, 461-462 (1969); *State* v. *Bunders*, 68 Wis. 2d 129 (1975). Cf. *State* v. *Brean*, 136 Vt. 147 (1978). See generally 2 R.E. Erwin, Defense of Drunk Driving Cases § 32.02[3] (3d ed. 1980 & Cum. Supp. 1980).

[4] See cases collected in *People* v. *Ramirez*, 199 Colo. 367, 374 n.8 (1980), and 2 R.E. Erwin, Defense of Drunk Driving Cases, *supra* at § 32.02[4]. See also *State* v. *Badon*, 401 So. 2d 1178 (La. 1981); *Wahpeton* v. *Skoog*, 300 N.W.2d 243 (N.D. 1980).

interrogation, may actually be directed to eliciting responses which are essentially testimonial." *Id.* at 764. On the other hand, the Court in *Schmerber* appeared to accept as correct those cases holding that the privilege offers no protection against compulsion to submit to "fingerprinting, photographing, or measurements, to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture" (footnote omitted). *Id.* See *United States* v. *Wade*, 388 U.S. 218, 223 (1967). In *Wade*, the Court held that compelling an accused to submit to a lineup and to utter certain words used by a person who committed a robbery did not violate the privilege against self-incrimination. The Court stated, "We have no doubt that compelling the accused merely to exhibit his person for observation . . . prior to trial involves no compulsion of the accused to give evidence having testimonial significance. It is compulsion of the accused to exhibit his physical characteristics, not compulsion to disclose any knowledge he might have." *Id.* at 222. We think that these statements support the proposition that "testimonial" evidence, for the purpose of Fifth Amendment analysis, is evidence which reveals the subject's knowledge or thoughts concerning some fact.

Our discussion in *Commonwealth* v. *Hughes*, 380 Mass. 583, cert. denied, 449 U.S. 900 (1980), is consistent with this view. There we held that the Commonwealth could not compel a defendant to produce a certain gun in circumstances where the Commonwealth sought to determine, among other things, the existence, location, and possessor of the gun. Because the production of the gun by the defendant would have revealed the defendant's knowledge about its existence, location, and control, we concluded that the resulting evidence would have been testimonial and therefore protected by the Fifth Amendment from compelled disclosure.[5]

---

[5] The court also stated that the same result "would . . . be required by the rather clearer terms of the Constitution of the Commonwealth." *Commonwealth* v. *Hughes*, 380 Mass. 583, 595 (1980), cert. denied, 449 U.S. 900 (1980).

Field sobriety tests, on the other hand, are not intended to reveal any thoughts or knowledge of the subject. Other courts have observed that such tests are based upon the relationship between intoxication and the loss of coordination which intoxication produces. They do not compel the subject to reveal his knowledge or thoughts. They only force him to exhibit his physical coordination, or lack thereof, for observation by a police officer. *People* v. *Ramirez*, 199 Colo. 367, 374-375 (1980). *Wahpeton* v. *Skoog*, 300 N.W.2d 243, 245 (N.D. 1980). *State* v. *Arsenault*, 115 N.H. 109, 113 (1975). Accordingly, we conclude that field sobriety tests do not elicit testimonial or communicative evidence and therefore do not trigger the protections afforded by the Fifth Amendment.

2. *The Privilege Against Self-incrimination Under Art. 12.*
The defendants argue that even if the use of the results of breathalyzer and field sobriety tests is not prohibited by the United States Constitution, it is prohibited by the seemingly broader language of art. 12. Article 12 provides in part that no person shall "be compelled to accuse, or furnish evidence against himself." As a preliminary matter, the Commonwealth in the Knockel case asserts that art. 12 has no application here because the defendant was not "compelled" to take the breathalyzer test, rather he was given a "choice" under G. L. c. 90, § 24 (1) (*f*) — that of taking the breathalyzer test or suffering the suspension of his driver's license for ninety days. We assume, for the purposes of this case, that the "choice" offered by § 24 (1) (*f*) constitutes compulsion sufficient to invoke art. 12.

The defendants assert that the natural meaning of the words "furnish evidence" encompasses real or physical evidence as well as testimonial or purely communicative evidence, and that art. 12 therefore requires a more expansive interpretation than that given the Fifth Amendment.[6] This court is, of course, free to interpret the provisions of art. 12

---

[6] The parallel provision of the Fifth Amendment states that no person "shall be compelled in any criminal case to be a witness against himself."

so as to extend its protections beyond those recognized under the Fifth Amendment. In the circumstances of this case, however, we decline to do so. A purely literal construction of art. 12 would forbid the compelled production of any evidence furnished by the defendant. Conceivably, this could apply to fingerprints, photographs, lineups, blood samples, handwriting and voice exemplars, and indeed, even the appearance of the defendant at trial for identification purposes. We doubt that the framers of our State Constitution intended art. 12 to prohibit these common methods of identification.

It has been said that art. 12 and the many similar constitutional provisions of other States merely restated the common law rule against self-incrimination. *Commonwealth* v. *Joyce,* 326 Mass. 751, 756, 757 (1951). *Brown* v. *Walker,* 161 U.S. 591, 596-597 (1896). See generally 8 J. Wigmore, Evidence §§ 2250, 2251 (McNaughton rev. 1961); Pittman, The Colonial and Constitutional History of the Privilege Against Self-Incrimination in America, 21 Va. L. Rev. 763 (1935). The common law privilege evolved from general disapproval of the inquisitorial practices that existed prior to 1700 in the ecclesiastical courts and the courts of Star Chamber and High Commission in England. See E. Dumbauld, The Bill of Rights, and What It Means Today 77 (1957). 8 J. Wigmore, *supra.* McCormick, Evidence § 114 (2d ed. 1972). Even a cursory review of the history of the privilege leaves little doubt that the privilege was directed toward the forced extraction of confessions and admissions from the lips of the accused. This suggests that the framers of our Declaration of Rights did not contemplate that art. 12 apply to real or physical evidence, the production of which would have no inherently communicative value.

To the extent that cases of this court have addressed the issue, they are consistent with this interpretation. In *Commonwealth* v. *DiStasio,* 294 Mass. 273, 283-284 (1936), cert. denied, 302 U.S. 683 (1937), it was held that art. 12 did not prohibit the use of evidence obtained pursuant to a

statutorily compelled psychiatric examination. Although the holding of the case is no longer sound, see generally *Blaisdel* v. *Commonwealth*, 372 Mass. 753, 757-760 (1977); *Commonwealth* v. *Lamb*, 365 Mass. 265, 270 (1974), the court said in reaching its decision, "The notion that a person accused may not be subjected to the observation of witnesses and jurors is a perversion of the rule against [self-incrimination]." 294 Mass. at 284. As authority for this statement the court cited cases from other jurisdictions which stand for the proposition that the privilege extends only to testimonial or communicative evidence.[7]   *Id.*   In *Commonwealth* v. *Burke*, 339 Mass. 521, 534-535 (1959), the court found no error in compelling a defendant to leave the prisoner's dock and assume a particular stance in front of the jury. In support of its holding the court cited *Holt* v. *United States*, 218 U.S. 245 (1910).[8]

The *DiStasio* and *Burke* cases indicate an acceptance by this court of the principle that the privilege against self-incrimination as expressed in art. 12 does not extend to non-

---

[7] Among the cases cited were *Holt* v. *United States*, 218 U.S. 245, 252-253 (1910), *United States* v. *Kelly*, 55 F.2d 67, 70 (2d Cir. 1932), and *People* v. *Gardner*, 144 N.Y. 119, 127-130 (1894). In *Holt*, it was held that an accused could be compelled to put on a blouse to determine whether it would fit him. The Court stated that "the prohibition of compelling a man in a criminal court to be witness against himself is a prohibition of the use of physical or moral compulsion to extort communications from him, not an exclusion of his body as evidence when it may be material." *Id.* In *Kelly*, it was held that an accused could be compelled to have his fingerprints taken. And in *Gardner*, the New York Court of Appeals found no error in compelling the accused to stand in court to be identified. There the court observed, "The main purpose of the [constitutional] provision was to prohibit the compulsory oral examination of prisoners before trial, or upon trial, for the purpose of extorting unwilling confessions or declarations implicating them in crime. It could reach further only in exceptional and peculiar cases coming within the spirit and purpose of the inhibition." 144 N.Y. at 128.

[8] *Commonwealth* v. *Burke*, 339 Mass. 521 (1959), and *Commonwealth* v. *DiStasio*, 294 Mass. 273 (1936), were decided before the Fifth Amendment privilege against self-incrimination was declared applicable to the States through the Fourteenth Amendment in *Malloy* v. *Hogan*, 378 U.S. 1 (1964).

communicative evidence. This is in accord with the majority of other States that have considered the question, many of which have constitutional provisions similar to ours. 8 J. Wigmore, *supra* at § 2265.[9] We believe it represents the sounder view. While it is true that some of the policies that underlie the privilege might warrant its application to a broader class of cases than ordinarily falls within its reach, "the privilege has never been given the full scope which the values it helps to protect suggest." *Schmerber* v. *California*, 384 U.S. 757, 762 (1966).[10] The refusal of most courts

[9] The Constitutions of seventeen States use the word "evidence" in stating the privilege against self-incrimination. See 8 J. Wigmore, Evidence § 2252 (McNaughton rev. 1961). Among the courts that have recognized a distinction between testimonial and real or physical evidence in their interpretation of their State Constitutions are: *State* v. *White*, 102 Ariz. 162, 163 (1967); *People* v. *Henne*, 11 Ill. App. 3d 405, 406-407 (1973); *State* v. *Haze*, 218 Kan. 60, 64-65 (1975); *Newman* v. *Stinson*, 489 S.W.2d 826, 829 (Ky. 1972); *State* v. *O'Connor*, 320 So. 2d 188, 193-194 (La. 1975); *Reed* v. *State*, 35 Md. App. 472, 491-493 (1977), rev'd on other grounds, 283 Md. 374, 399-400 (1978); *State* v. *Swayze*, 197 Neb. 149, 150-154 (1976); *State* v. *Arsenault*, 115 N.H. 109 (1975); *State* v. *Strickland*, 276 N.C. 253, 257-260 (1970); *State* v. *Thomason*, 538 P.2d 1080, 1085-1086 (Okla. Crim. App. 1975); *Commonwealth* v. *Moss*, 233 Pa. Super. 541, 546 (1975); *Delk* v. *State*, 590 S.W.2d 435 (Tenn. 1979); *Olson* v. *State*, 484 S.W.2d 756, 772 (Tex. Crim. App. 1972); *State* v. *Brean*, 136 Vt. 147, 151 (1978); *Walton* v. *Roanoke*, 204 Va. 678, 682 (1963); *State* v. *Moore*, 79 Wash. 2d 51, 57 (1971). See also *State* v. *Bock*, 80 Idaho 296 (1958), and cases collected at 301. Contra, *State* v. *Armstead*, 152 Ga. App. 56 (1979); *Hansen* v. *Owens*, 619 P.2d 315, 317 (Utah 1980).

[10] The several policies that underlie the privilege are discussed in J. Wigmore *supra* at § 2251. In *Miranda* v. *Arizona*, 384 U.S. 436, 460 (1966), the Court summarized the interests protected by the privilege: "All these policies point to one overriding thought: the constitutional foundation underlying the privilege is the respect a government — state or federal — must accord to the dignity and integrity of its citizens. To maintain a 'fair state-individual balance,' to require the government 'to shoulder the entire load,' . . . to respect the inviolability of the human personality, our accusatory system of criminal justice demands that the government seeking to punish an individual produce the evidence against him by its own independent labors, rather than by the cruel, simple expedient of compelling it from his own mouth."

An argument that these policies support a broader application of the privilege than has been required under the Fifth Amendment is presented in Dann, The Fifth Amendment Privilege Against Self-Incrimination: Extorting Physical Evidence From a Suspect, 43 S. Cal. L. Rev. 597 (1970).

to adopt an expansive interpretation of the privilege has undoubtedly stemmed in part from a concern for the severe constraints on law enforcement practices that would otherwise result, and from the fact that compelled production of physical evidence is far less offensive to common standards of decency. We conclude that art. 12 of the Declaration of Rights applies only to evidence of a testimonial or communicative nature, and that neither a breathalyzer test nor field sobriety tests are communicative to the extent necessary to evoke the privilege.

The order of the District Court judge allowing the defendant Brennan's motion to suppress is reversed in so far as it relates to the results of the breathalyzer and field sobriety tests. So much of the order as suppresses Brennan's oral statements made to the police while in custody is affirmed. To question one reported by the District Court judge in Knockel's case, we answer, "No." To question two we answer that art. 12 of the Massachusetts Declaration of Rights precludes only the compelled production of "testimonial" evidence. As to a request for costs and expenses made by the defendant Brennan pursuant to Mass. R. Crim. P. 15 (d), 378 Mass. 882 (1979), this request may be presented by appropriate motion to a single justice of this court.

*So ordered.*