509 A.2d 413

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Ronald ROMESBURG, Appellant.**

Superior Court of Pennsylvania.

Argued March 24, 1986.

Filed May 19, 1986.

216

Vicki K. Horne, Greensburg, for appellant.

Edward M. Clark, Assistant District Attorney, Pittsburgh, for Com., appellee.

Before ROWLEY, WIEAND and DEL SOLE, JJ.

WIEAND, Judge:

The major issue raised in this direct appeal from a judgment of sentence imposed for driving while under the influence of alcohol is whether the Commonwealth's use of the results of field sobriety tests violated the guarantee against self-incrimination contained in Article I, Section 9 of the Pennsylvania Constitution. Appellant also challenges (1) the relevance of the results of a blood test taken two hours after arrest and (2) the Commonwealth's right to use the test results where the sample of his blood had been destroyed and was not available for independent testing. We affirm.

At or about 7:19 p.m. on February 14, 1984, Ronald Romesburg was stopped by an officer of the Tri-Area Joint Police Department on Route 19 North in northern Allegheny County after his car had been observed weaving back and forth between highway and berm. The officer smelled and noted a moderate odor of alcohol from appellant's breath. Romesburg's speech was slurred, and his eyes were bloodshot. He was asked to perform several field sobriety tests, which he was not able to perform adequately. Therefore, appellant was placed under arrest and taken to the Franklin Park Police Station. There a breathalyzer test was administered. When the breathalyzer malfunctioned, appellant was taken to Passavant Hospital where, at 9:22 p.m., a sample of his blood was drawn. An analysis of the blood sample established that appellant's blood alcohol concentration was .34 percent. There was also testimony that appellant had eaten breakfast (his only meal of the day) at 6:45 a.m. on February 14th, had drunk a beer about 1:00 p.m., and had been drinking after work at a local pub between 6:00 and 7:00 p.m. He left the pub about 7:00 p.m. Appellant was tried without jury and was found guilty of driving while under the influence of alcohol. A motion for a new trial was denied, and appellant was sentenced to forty-eight hours imprisonment and probation for two years less two days; appellant was also ordered to pay various fines and costs.

The fifth amendment of the United States Constitution provides that "[n]o person ... shall be compelled in any criminal case *to be a witness against himself. ...*" (emphasis added). This protection, it has been held, precludes self-incrimination only by the use of testimonial evidence. See: *United States v. Wade,* 388 U.S. 218, 221–223, 87 S.Ct. 1926, 1929–1930, 18 L.Ed.2d 1149, 1154–1155 (1967); *Schmerber v. California,* 384 U.S. 757, 761, 86 S.Ct. 1826, 1830, 16 L.Ed.2d 908, 914 (1966). Article I, section 9 of the Pennsylvania Constitution, by way of contrast, provides that "[i]n all criminal prosecutions, the accused ... cannot be compelled to *give evidence against himself. ...*" (emphasis added). Appellant argues that the protection guaran-

teed by Article I, section 9 of the Pennsylvania Constitution is broader than the federal guarantee and includes, in addition to testimonial communications, non-testimonial evidence as well.

■ While it is true that the guarantees provided by our state constitution may provide greater protection than the guarantees of the federal constitution, *Commonwealth v. Sell*, 504 Pa. 46, 63–64, 470 A.2d 457, 466–467 (1983); *Commonwealth v. Tate*, 495 Pa. 158, 169–170, 432 A.2d 1382, 1387–1388 (1981), the appellate courts of Pennsylvania have consistently held that the protections against self-incrimination afforded by the two constitutions are identical. See,. e.g., *Commonwealth v. Hawthorne*, 428 Pa. 260, 262–263, 236 A.2d 519, 520 (1968); *Commonwealth v. Carrera*, 424 Pa. 551, 553, 227 A.2d 627, 629 (1967); *Commonwealth v. Fernandez*, 333 Pa.Super. 279, 284, 482 A.2d 567, 569 (1984); *Commonwealth v. Webster*, 323 Pa.Super. 164, 172, 470 A.2d 532, 536 (1983) (collecting cases). Both state and federal proscriptions "have consistently been held to exclude only evidence which is testimonial in nature. Testimonial evidence is communicative evidence as distinguished from demonstrative or physical evidence." *Commonwealth v. Fernandez, supra* (citations omitted). The privilege protects an accused from the use of physical or moral compulsion to extract communications, *Holt v. United States*, 218 U.S. 245, 252–253, 31 S.Ct. 2, 6, 54 L.Ed. 1021, 1030 (1910), either in the form of testimony, writing, or other communicative act. *Schmerber v. California, supra* 384 U.S. at 765, 86 S.Ct. at 1833, 16 L.Ed.2d at 916–917. "Limiting the privilege to testimonial activity ... serve[s] to apply it to those situations where the compulsion is most likely to be excessive or abused and where it is most likely to result in obtaining unreliable evidence." *McCormick on Evidence*, § 124, at 304 (3rd ed. 1984).

Field sobriety tests do not elicit testimonial or communicative evidence and, thus, do not trigger fifth amendment protection. They

are not intended to reveal any thoughts or knowledge of the subject. Other courts have observed that such tests

are based upon the relationship between intoxication and the loss of coordination which intoxication produces. They do not compel the subject to reveal his knowledge or thoughts. They only force him to exhibit his physical coordination, or lack thereof, for observation by a police officer. *People v. Ramirez,* [199 Colo. 367] 609 P.2d 616, 620, 621 (Colo.1980). *Wahpeton v. Skoog,* 300 N.W.2d 243, 245 (N.D.1980). *State v. Arsenault,* 115 N.H. 109, 113, 336 A.2d 244 (1975).

*Commonwealth v. Brennan,* 386 Mass. 772, 779, 438 N.E.2d 60, 65 (1982).

In *Commonwealth v. Moss,* 233 Pa.Super. 541, 545, 334 A.2d 777, 779–780 (1975), this Court held that a defendant was not compelled to communicate protected knowledge in violation of Article I, section 9 by being required to produce a handwriting exemplar. In concluding that the defendant was not required to give evidence against herself, this Court implicitly held that the state constitutional privilege was identical to the safeguard of the federal constitution and had application only to testimonial compulsion. See also: *Olson v. State,* 484 S.W.2d 756 (Tex.Crim.App.1972). In *Commonwealth v. Fernandez, supra* 333 Pa.Super. at 285, 482 A.2d at 570, this Court also held that compelling a defendant to shave his beard did not compel him to give evidence against himself. Requiring the defendant to shave his beard did not compel him to communicate protected knowledge, nor was it a use of " 'physical or moral compulsion to extort communications form him[.]' " *Id.,* 333 Pa. Superior Ct. at 284, 482 A.2d at 569, quoting *Holt v. United States,* 218 U.S. 245, 252–253, 31 S.Ct. 2, 6, 54 L.Ed. 1021, 1030 (1910). Instead, "the order served the interests of justice in obtaining demonstrative evidence of appellant's appearance, at the time of the murders, for the jury as finder of fact." *Commonwealth v. Fernandez, supra* 333 Pa.Super. at 285, 482 A.2d at 569–570 (footnote omitted).

The Supreme Judicial Court of Massachusetts was faced with a similar contention in *Commonwealth v. Brennan, supra,* where the defendant asserted that Article 12 of the

Massachusetts Constitution (providing in part that no person shall "be compelled to accuse, or furnish evidence against himself") precluded the use of the results of field sobriety tests. There the Court held:

It has been said that art. 12 and the many similar constitutional provisions of other States merely restated the common law rule against self-incrimination. *Commonwealth v. Joyce*, 326 Mass. 751, 756–757, 97 N.E.2d 192 (1951). *Brown v. Walker*, 161 U.S. 591, 596–597, 16 S.Ct. 644, 646–647, 40 L.Ed. 819 (1896). See generally 8 J. Wigmore, Evidence §§ 2250, 2251 (McNaughton rev. ed. 1961); Pittman, The Colonial and Constitutional History of the Privilege against Self-Incrimination in America, 21 Va.L.Rev. 763 (1935). The common law privilege evolved from general disapproval of the inquisitorial practices that existed prior to 1700 in the ecclesiastical courts and the courts of Star Chamber and High Commission in England. See E. Dumbauld, The Bill of Rights, and What It Means Today 77 (1957). 8 J. Wigmore, *supra*. McCormick, Evidence § 114 (Cleary ed. 1972). Even a cursory review of the history of the privilege leaves little doubt that the privilege was directed toward the forced extraction of confessions and admissions from the lips of the accused. This suggests that the framers of our Declaration of Rights did not contemplate that art. 12 apply to real or physical evidence, the production of which would have no inherently communicative value.

.     .     .     .     .

This is in accord with the majority of other States that have considered the question, many of which have constitutional provisions similar to ours. 8 J. Wigmore, *supra* at § 2265. We believe it represents the sounder view. While it is true that some of the policies that underlie the privilege might warrant its application to a broader class of cases than ordinarily falls within its reach, "the privilege has never been given the full scope which the values it helps to protect suggest." *Schmerber v. California*, 384 U.S. 757, 762, 86 S.Ct. 1826, 1831, 16 L.Ed.2d 908 (1966). The refusal of most courts to adopt an expansive

interpretation of the privilege has undoubtedly stemmed in part from a concern for the severe constraints on law enforcement practices that would otherwise result, and from the fact that compelled production of physical evidence is far less offensive to common standards of decency. We conclude that art. 12 of the Declaration of Rights applies only to evidence of a testimonial or communicative nature, and that neither a breathalyzer test nor field sobriety tests are communicative to the extent necessary to evoke the privilege.

*Id.* at 780, 782, 438 N.E.2d at 65–67 (footnotes omitted).

■ We agree with the Massachusetts Court and hold that the privilege against self-incrimination found in Article I, section 9 of the Pennsylvania Constitution does not preclude evidence of the results of field sobriety tests administered to citizens believed by the police to be under the influence of alcohol. Article I, section 9 protects only testimonial evidence. Field sobriety tests are neither testimonial in nature nor do they extract or communicate protected knowledge or thoughts. Field sobriety tests merely require a driver to exhibit his or her physical coordination. The policy which supports the privilege against self-incrimination—governmental respect for the dignity and integrity of its citizens—is not offended by this holding. The intoxicated driver subjected to field sobriety tests does not have extracted from his or her lips an unwilling confession; he or she is not subjected to compulsory oral examination. Therefore, we affirm the admission of the field sobriety test results by the trial court.

■ "Whether the time intervening between [arrest] and withdrawal of blood was so great as to render the results inadmissible on grounds of relevancy required the exercise of discretion by the trial court." *Commonwealth v. Kostra*, 349 Pa.Super. 89, 99, 502 A.2d 1287, 1292 (1985). We perceive no abuse of that discretion here. Although the blood sample was not taken until more than two hours after appellant had been stopped, the test result of .34 percent was clearly relevant to the issue of whether appellant was under the influence of alcohol while driving a vehicle. "So

long as a blood test is indicative of a defendant's condition at a relevant time, it is admissible and subject to attack or contradiction by other competent evidence." *Commonwealth v. Arizini*, 277 Pa.Super. 27, 41, 419 A.2d 643, 650 (1980). The delay between the operation of the motor vehicle and the drawing of the blood went only to the weight of the evidence, not its admissibility. *Commonwealth v. Tylwalk*, 258 Pa.Super. 506, 510, 393 A.2d 473, 475 (1978). This evidence could be considered by the trier of fact along with evidence that appellant had driven erratically, had had an odor of alcohol about him, had spoken with slurred speech, had exhibited bloodshot eyes, and had poorly performed the field sobriety tests. See and compare: *Commonwealth v. Kostra, supra* (test results taken two hours after operation of a motor vehicle relevant); *Commonwealth v. Arizini, supra* (same); *Commonwealth v. Tylwalk, supra* (one and one-half hours); *Commonwealth v. Trefry*, 249 Pa.Super. 117, 375 A.2d 786 (1977) (four and one-half hours), *overruled on other grounds, Commonwealth v. Lapia*, 311 Pa.Super. 264, 457 A.2d 877 (1983), *reversed, Commonwealth v. Dugger*, 506 Pa. 537, 486 A.2d 382 (1985). See also: *Commonwealth v. Speights*, 353 Pa.Super. 258, 509 A.2d 1263 (1986) (Commonwealth not required to offer evidence relating a blood alcohol test result back to time of vehicular offense; absence of expert testimony relating back a later test result does not render test result insufficient evidence upon which to convict a defendant of violating 75 Pa.C.S.A. § 3731(a)(4)).

■ The alleged inadmissibility of the results of the blood test because of the Commonwealth's failure to preserve a portion of the blood sample for independent testing has been waived. Pa.R.Crim.P. 323(b) requires, in pertinent part, that a motion to suppress evidence shall be included in an omnibus pre-trial motion. Rule 332(b) further provides that "[i]f timely motion is not made hereunder, the issue of suppression of such evidence shall be deemed to be waived." Appellant's omnibus pre-trial motion attacked the admissibility of the results of the blood test on grounds that no expert witness could establish the blood alcohol level

with reasonable certainty at the time of arrest. The motion also attacked the admissibility of the field sobriety tests. The motion contained no reference to an alleged failure by the Commonwealth to preserve a portion of the blood sample for independent testing. The issue, therefore, has been waived, and we need not address the merits of appellant's contention that the Commonwealth's failure to preserve some of his blood sample for independent testing purposes denied him due process. See: *Commonwealth v. Lore*, 338 Pa.Super. 42, 54 n. 8, 487 A.2d 841, 847–848 n. 8 (1984). Appellant also did not make a contemporaneous objection on this ground at trial. See generally: *Commonwealth v. Hassine*, 340 Pa.Super. 318, 343, 490 A.2d 438, 451 (1985) (failure to object to alleged prejudicial remarks made during unrecorded summation renders issue waived); *Commonwealth v. Artis*, 294 Pa.Super. 276, 281, 439 A.2d 1199, 1201 (1982) (failure to object to recitation of wrong bill of information renders issue waived); *Commonwealth v. Smith*, 280 Pa.Super. 226, 228, 421 A.2d 695, 695 (1980) (failure to object to trial court's exclusion of spectators at trial renders issue waived).

Our consideration of the issues raised by appellant and our careful review of the record suggest no basis for interfering with the findings of the trial court.

The judgment of sentence is affirmed.