Garsh, J.
The Commonwealth moves for an order compelling the defendant Russell Burgess (“Burgess”) to execute a form authorizing the Internal Revenue Service (“IRS”) to forward to the Office of the Attorney General information concerning the defendant’s federal income tax returns, if any, for the years 1987 through 1990. The Commonwealth may not obtain this information from the IRS without such an authorization, and Burgess refuses to consent. The defendant opposes the motion on the grounds that such an order would violate his privilege against self-incrimination guaranteed by the Fifth Amendment to the United States Constitution and by Article Twelve of the Massachusetts Declaration of Rights, and, on the further ground, that this court lacks jurisdiction to grant the Commonwealth’s request.
For the following reasons, the Commonwealth’s Motion to Compel is ALLOWED.
FACTUAL BACKGROUND
A Suffolk Grand Jury indicted Burgess for insurance fraud and larceny by false pretenses in connection with an alleged series of insurance fraud schemes perpetrated during the late 1980’s and early 1990’s. There is evidence that, over a ten-year period, the defendant and an associate filed over sixty insurance claims involving motor vehicle accidents. During this period of time, the Commonwealth claims that Burgess was not regularly employed nor consistently involved in any trade.
The Commonwealth contends that Burgess staged accidents and then inflated the amount of his loss of earnings resulting from such accidents. More specifically, the Commonwealth has evidence that Burgess claimed to be involved in a motor vehicle accident on April 13, 1989, and that he subsequently filed insurance claims asserting that temporary total disability resulting from that accident prevented him from working at his regular job as a self-employed commercial fisherman. There is evidence that the defendant claimed he had made more than $2000 per week from commercial fishing prior to the accident. To prove that loss, insurance companies required Burgess to provide documentary proof, and there is evidence that he did so by submitting what appeared to be copies of his 1987 and 1988 federal income tax rethrns showing an annual income in excess of $ 110,000 from commercial fishing. The Commonwealth contends that the insurers paid insurance benefits in reliance upon these tax returns.
The Commonwealth possesses circumstantial evidence that the 1987 and 1988 federal tax returns provided to insurance companies were not filed with the IRS. Burgess apparently made no income tax filings for the years in question with the Commonwealth’s Department of Revenue even though he claimed to be operating his fishing business in Revere, Massachusetts, and, in 1990, he filed a tax return with the Department of Revenue reporting negative taxable income as an “Indian Guide” in Maine. Second, in connection with other insurance claims from other dates, Burgess did not assert that he was a commercial fisherman. Finally, on a number of insurance claims stemming from a May 25, 1990 accident, Burgess allegedly submitted copies of federal income tax returns, purportedly for 1989, in which all of the entries were identical to those purportedly on the return filed for 1987.
Because the contents of Burgess’ actual tax returns for the years 1987 through 1990 and/or information that no returns were filed, are extremely relevant, and because the Commonwealth cannot subpoena them from the IRS, the Commonwealth seeks to compel Burgess to sign a form authorizing the IRS to release such information.
DISCUSSION
A. Fifth Amendment Protection Against Self-Incrimination
The Fifth Amendment provides that “[n]o person... shall be compelled in any criminal case to be a witness against himself.” Its protection “applies only when the accused is compelled to make a testimonial communication that is incriminating.” Fisher v. United States, 425 U.S. 391, 408 (1976) (emphasis in original). In other words, the Fifth Amendment privilege against self-incrimination “applies to acts that imply assertions of fact.” Doe v. United States, 487 U.S. 201, 209 (1988) (privilege not violated by court order compelling target of grand jury to authorize foreign banks to release account records). A communication is testimonial when the defendant is forced to “disclose the contents of his own mind.” Id. at 211, citing Curcio v. United States, 354 U.S. 118, 128 (1957).
The Fifth Amendment privilege against self-incrimination does not extend to the contents of the tax returns sought by the Commonwealth nor to the fact of the existence or non-existence of such returns; the IRS cannot invoke the Fifth Amendment in declining to produce the requested information, and the defendant has no Fifth Amendment right to prevent the IRS from disclosing such information. Doe, 487 U.S. at 206-07, and cases cited therein. Only if the authorization form itself or Burgess’ act of signing that form are incriminating testimonial communications is the Fifth Amendment implicated.[1]
*83 The United States Supreme Court addressed the issue of compelled authorization forms in Doe, supra. In that case, a federal grand jury had served subpoenas on several foreign banks commanding them to produce records of accounts over which Doe was believed to have had signatory authority. After the banks refused to comply, citing their governments’ bank secrecy laws that made it a crime to divulge confidential account information without the customer’s consent, the government moved to compel Doe to sign a consent directive authorizing disclosure.
The Court held that Doe’s compelled execution of the consent directive was not testimonial, and, therefore, did not violate Doe’s privilege against self-incrimination. “[NJeither the form, nor its execution, communicate any factual assertions, implicit or explicit, or convey any information to the Government.” Id. at 215. The consent had been “carefully drafted not to make reference to a specific account, but only to speak in the hypothetical.” Id. It did not acknowledge that an account in a foreign bank existed or admit any control of such an account by Doe. Further, because the consent was to be signed pursuant to a court order, the compelled execution would shed no light on Doe’s state of mind. Id. at 216. Under these circumstances, compelling a defendant to sign an authorization is no different than compelling a defendant to provide a handwriting sample or voice exemplar. Id. at 217.
Burgess argues that Doe is distinguishable because the authorization form he has been asked to execute is testimonial in nature. The name of the requester is inserted under the heading “taxpayer” and, thus, argues Burgess, it constitutes an acknowledgment that he is a person required to file federal tax returns. It appears clear that the word “taxpayer,” as used on the Tax Information Authorization, simply is a designation of the name of the person making the request for information and could not be used as an admission by Burgess that he has, or should have, filed returns.[2] In any event, the Commonwealth represented that it was willing to add language, such as the following, making the meaning unambiguously clear: “ Taxpayer’ is used solely as the designation of the person making this request and is not intended to, and does not, imply any obligation on the part of the requester to have filed any tax returns.”
Likewise, nothing in the remainder of the authorization form forces Burgess to “provide information that will assist the prosecution in uncovering evidence.” Doe, 487 U.S. at 215. The form authorizes the release of “tax information.” That does not imply that any returns were filed since the “information” released may be that no such returns can be located. Again, the Commonwealth is willing to eliminate any ambiguity by adding the words “if any” after the phrase “authorized to inspect and/or receive confidential tax information.” This is not a situation, such as in Doe, where there was a concern that the requester not be required to sign anything that would make it appear as if he had knowledge as to the existence of the accounts or had authority to control those accounts. Here no unique information appears on the form; the type of tax forms listed are ones of public knowledge. The form simply authorizes the IRS to provide whatever information may exist for particular years without acknowledging such information does or should exist. Further, as in Doe, the authorization form does not authenticate anything. Id. at 216. Finally, because the authorization will reflect that Burgess is signing it “pursuant to Court Order,” compelled execution of the form sheds no light on the defendant’s state of mind. Id.
In sum, although the executed tax information authorization may grant the government access to a potential source of incriminating evidence, the form, by itself, neither implicitly nor explicitly conveys information that will assist the prosecution in uncovering evidence.[3] Compelling Burgess to execute it will not violate his Fifth Amendment right against self-incrimination. See generally Commodity Futures Trading Comm’n v. Collins, 997 F.2d 1230, 1232 (1993) (dictum) (Commission “may have” power under Doe to require individuals under investigation for civil violations of the Commodiiy Exchange Act to obtain copies of their returns from the IRS); U.S. v. $1,322,242.58, 938 F.2d 433, 439-40, n. 6 (3d Cir. 1991) (dictum) (“it seems very unlikely,” given the holding in Doe, that Fifth Amendment privilege would justify failure to obey a request to execute release seeking various IRS forms).[4]
B. Article 12 of the Massachusetts Declaration of Rights
Defendant argues that article 12 of the Massachusetts Declaration of Rights provides independent protection against being compelled to execute the authorization form. Article 12 provides that “[n]o subject shall be . . . compelled to accuse, or furnish evidence against himself.”
While it is true that article 12 provides a broader immunity from self-incrimination than does the Fifth Amendment, Attorney General v. Colleton, 387 Mass. 790, 796 (1982), it does not apply to a broader class of evidence. Like the Fifth Amendment, article 12 precludes only the compelled production of evidence of a “testimonial or communicative nature.”[5] Commonwealth v. Brennan, 386 Mass. 772, 783 (1982). The authorization form is not sufficiently communicative to permit Burgess to invoke the privilege.
Nothing in Commonwealth v. Doe, 405 Mass. 676 (1989), upon which the defendant relies, requires a different result. In that case, the court held that article 12 protects a custodian of corporate records when the act of production itself would be self-incriminating. Id. at 678. By contrast, a custodian of a corporation may not rely on the Fifth Amendment even where the act of production would incriminate him personally. *84 Braswell v. United States, 487 U.S. 99 (1988). The Supreme Judicial Court reasoned that the actual act of production may itself be communicative as to the existence, location, control, and authenticity of the documents turned over, reflecting the knowledge, understanding, and thoughts of the witness. Commonwealth v. Doe, 405 Mass. at 679. Nevertheless, the Court reiterated that “ [n]ontestimonial evidence can be demanded.” Id. at 681.
The act of signing, under court order, an authorization form is far different from the personal collection and production of records at issue in Commonwealth v. Doe. It also is not analogous to the refusal to consent to a breathalyzer test because such refusal evidence might be offered to show that the person had doubts about his ability to pass the test. Opinion of the Justices, 412 Mass. 1201, 1209 (1992). The act of signing a consent to disclosure under court order reveals nothing about the defendant’s knowledge, understanding, or thoughts. Article 12, thus, does not preclude compelling Burgess to sign the authorization.
C. 26 U.S.C. §6103
Burgess contends that this court lacks jurisdiction, pursuant to the doctrine of preemption, to order him to sign the authorization because such an order would contravene and/or undermine federal law. The IRS may disseminate tax information to a third person designated “in a written request for or consent to such disclosure.” 26 U.S.C. §6103(c). State prosecutors have no other means of access to tax information in the possession of the IRS because the IRS may make disclosures only to state agencies “charged . . . with responsibility for the administration of State tax laws for the purpose of, and only to the extent necessary in, the administration of such laws.” 26 U.S.C. §6103(d). Federal prosecutors, on the other hand, may obtain tax return information from the IRS in connection with a judicial proceeding not relating to tax information by obtaining an ex parte order from a federal district court judge or magistrate. 26 U.S.C. §6103(i)(l)(A). Such an order may be granted upon the applicant’s demonstration that:
(i) there is reasonable cause to believe, based upon information believed to be reliable, that a specific criminal act has been committed, (ii) there is reasonable cause to believe that the return or return information is or may be relevant to a matter relating to the commission of the such act, and (iii) the return or return information is sought exclusively for use in a Federal criminal investigation or proceeding concerning such act, and the information sought to be disclosed cannot reasonably be obtained, under the circumstances, from another source.
26 U.S.C. §6103(i)(l)(B).
Application of the test for federal preemption to the language and purpose of Section 6103 shows that it does not deprive the state court of authority to order a defendant to authorize the IRS to release tax information. Under the Supremacy Clause, federal law may supersede state law in any of three ways. Congress may preempt state authority by simply stating so in express terms. Hillsborough County v. Automated Medical Laboratories, Inc., 471 U.S. 707, 713 (1985). In the absence of express language, Congress’ preemptive intent may be inferred only from a pervasive scheme of federal regulation that leaves no room for supplementary state action. Id. Federal legislation also preempts any state law that actually conflicts with or presents an obstacle to the federal law. Jones v. Rath Packing Co., 430 U.S. 519, 525-26 (1977).
No language in the text of the federal statute expressly prohibits this court from ordering a defendant to execute an authorization form. Certainly, “if the government should determine that its interests in obtaining the fullest disclosure of pertinent information by taxpayers would be furthered by preventing” courts from directing parties to obtain copies of returns from the IRS, it could so provide. Tollefson v. Phillips, 16 F.R.D. 348, 349 (D.Mass. 1954) (plaintiff may be compelled to obtain copies of his tax returns from the IRS). Congress has chosen not to do so, and Burgess points to no legislative history demonstrating a “clear and manifest purpose” of Congress to preempt such state action. See Jones, 430 U.S. at 525. While Congress created a pervasive federal scheme with respect to what information may be released by the IRS which would preclude this court from ordering the IRS to release information it is not authorized to release under the federal statute, Congress did not create a scheme that leaves no room for control to be exercised over persons who may have filed tax returns.
A conflict between state and federal law exists only when “compliance with both federal and state regulations is a physical impossibility,” Florida Lime & Avocado Growers v. Paul, 373 U.S. 132, 142-43 (1963), or when the state law “stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.” Jones, 430 U.S. at 526, quoting Hines v. Davidowitz, 312 U.S. 52, 67 (1941). See also Attorney General v. Brown, 400 Mass. 826, 828-29 (1987). Compliance with Section 6103 and a court order compelling authorization is not physically impossible. The statute is directed to the IRS and the requested order is directed to Burgess. Both can comply-
Finally, permitting the Commonwealth to gain access to a defendant’s confidential tax information for a purpose other than enforcement of state tax laws would not frustrate the objectives of Section 6103. There must be “actual, impermissible conflict,” not merely “unsupported pronouncements as to [federal] policy.” Grocery Mfrs. of America, Inc. v. Department of Public Health, 379 Mass. 70, 82 (1979). The purpose of the federal tax information disclosure statute is to *85 assure that returns will not become public knowledge and to provide for automatic access to tax return information by certain persons deemed to have a material interest. Crown Cork & Seal Co. v. Pennsylvania Human Relations Comm'n, 463 F.Supp. 120, 122-123 (E.D. Pa. 1979); Tollefson, 16 F.R.D. at 349 (purpose of the tax code “appears to be to prevent wholesale revelation of confidential information to persons not determined to have a legitimate interest therein”). The statute does not create an absolute privilege. Thus, courts in civil cases have required parties — plaintiffs and defendants — to produce copies of their returns or to secure copies from the IRS. E.g., Kingsley v. Delaware, Lackawanna & Western Railroad Co., 20 F.R.D. 156, 158-159 (S.D.N.Y. 1957) (plaintiff required to obtain tax return from federal government if he does not himself have copies); Paramount Film Distributing Corp. v. Ram, 91 F.Supp. 778, 782 (E.D.S.C. 1950) (defendant directed to procure copies of tax returns from IRS). See also Finance Commission of Boston v. McGrath, 343 Mass. 754, 766-68 (1962) (Finance Commission entitled to an order compelling auctioneer to testify before Commission and, upon demonstrating relevance, to an order compelling his production of federal income tax returns); Equitable Life Assurance Society v. Rocanova, 592 N.Y.S.2d 360, 361 (1993) (affirming order that defendant turn over copies of federal tax returns or execute appropriate instrument authorizing IRS to send copies to plaintiffs counsel).[6]
Just as the federal tax disclosure provisions have been construed not to conflict with an order compelling a defendant in a civil action to request copies of returns from the IRS, so too nothing in that statute conflicts with an order compelling a defendant in a criminal proceeding to sign the same kind of authorization. The preemption analysis should not be affected by the fact that in civil cases a judge has the option to fashion a penalty other than contempt for violation of a court order. The Commonwealth has a legitimate and strong interest in obtaining copies of the defendant’s filed federal income tax returns, if any, for the years 1987 through 1990. This court has a “duty to avoid a construction that would suppress otherwise competent evidence unless the statute, strictly construed, requires such a result.” St. Regis Paper Co. v. United States, 368 U.S. 208, 218, reh. den. 368 U.S. 972 (1968) (upholding order that corporation produce copy of information supplied to government which Secretary of Commerce is required to keep confidential under the Census Act). In fact, in St. Regis, the Court analogized the census reports at issue therein with tax returns made confidential by §6103, noting that the latter are subject to discovery. Id at 219.
Furthermore, nothing in the order requested by the Commonwealth purports to compel the IRS to release any information. If the IRS deems an authorization signed “pursuant to court order” not to be effective to constitute a “request” or “consent” within the meaning of 26 U.S.C. §6301(c), it may decline to respond.
The Commonwealth has met whatever qualified privilege may exist by its demonstration of “a high standard of relevance” for the information sought.[7] Town Taxi, Inc. v. Police Commissoner of Boston, 377 Mass. 576, 587 (1979). The grand jury testimony demonstrates a reasonable cause to believe that a specific criminal act has been committed by the defendant. There is reasonable cause to believe that the requested returns or return information is relevant to a matter relating to the commission of the crimes for which Burgess has been indicted. Burgess’ income is directly at issue in this action. Disclosure would create no motive to falsify tax returns. The Commonwealth cannot obtain the information it seeks from any other source, and Congress, in 26 U.S.C. 6103(i)(l), has already created an analogous exception to the confidentiality requirement. Id
ORDER
For reasons set forth above, it is hereby ORDERED that:
(1) the Commonwealth’s Motion to Compel be, and hereby is, ALLOWED;
(2) Russell Burgess shall sign, within ten days of the date of this Order, a Tax Information Authorization in the form attached to the Motion to Compel which contains the following additional language in Section 1: “ Taxpayer’ is used solely as the designation of the person making this request and is not intended to, and does not, imply any obligation on the part of the requester to have filed any tax returns,” and which adds the words “if any” after the following words in Section two: “authorized to inspect and/or receive confidential tax information;” and,
(3) the Assistant Attorney General may disclose information received pursuant to said authorization only to persons in the Office of the Attorney General personally and directly engaged in the prosecution of the instant criminal proceeding and, .further, such information shall be used solely in connection with the prosecution of this proceeding unless this restriction is amended by further order of the court.

It is assumed that execution of the authorization form would lead to incriminating evidence. However, a compelled statement that is not testimonial does not become so simply because it will lead to incriminating evidence. Doe, 487 U.S. at 208, n.6.

“A request for or consent to disclosure must be in the form of a written document . . . signed and dated by the taxpayer who filed the return or to whom the return information relates.” 26 CRR §301.6103(c)-1 (emphasis supplied). “Return information” would include the fact that no returns can be located.

It will assist neither the Attorney General in prosecuting this case nor the federal government in any prosecution of Burgess for failure to file returns if no returns were filed.

Indeed, at least one court has held that the testimonial aspect involved in compelling a defendant himself to produce *86 his tax returns would not be sufficient to rise to the level of fifth amendment protection. Lowder v. All Star Mills, Inc., 301 N.C. 561, 591, 273 S.E.2d 247, 264 (1981).

“A purely literal construction of art. 12 would forbid the compelled production of any evidence furnished by the defendant. Conceivably, this could apply to fingerprints, photographs, line-ups, blood samples, handwriting and voice exemplars, and, indeed, even the appearance of the defendant at trial for identification purposes. We doubt that the framers of our State Constitution intended art. 12 to prohibit these common methods of identification.” Commonwealth v. Brennan, 386 Mass. 772, 780 (1982).

Disclosure by a taxpayer himself of copies of returns is not an unauthorized disclosure even when made under legal compulsion. United States v. Sheriff, 330 F.2d 100, 101 (2d Cir. 1964).

If the IRS reports that it has no record of any such returns, that information may be able to be used by the Commonwealth to show that no returns were filed. Commonwealth v. Garabedian, 8 Mass.App.Ct. 442, 445 (1979).