COMMONWEALTH *vs.* KENNETH S. AYRE.

No. 90-P-239.

Bristol. March 7, 1991. - July 5, 1991.

Present: SMITH, FINE, & GREENBERG, JJ.

*Motor Vehicle*, Operating under the influence. *Evidence*, Admissions and
    confessions, Prior misconduct. *Constitutional Law*, Admissions and
    confessions, Self-incrimination. *Practice, Criminal*, Opening statement,
    Comment by prosecutor, Instructions to jury. *Error*, Harmless.

A motorist temporarily detained on the side of a road pursuant to a traffic
    stop by a police officer was not in custody and, therefore, the motorist
    was not entitled to Miranda warnings prior to his performance of cer-
    tain field sobriety tests. [19-21]
At the trial of a complaint charging the operation of a motor vehicle while
    under the influence of intoxicating liquor, certain remarks contained in
    the prosecutor's opening statement and in the testimony of police of-
    ficers, alleged to represent prohibited comment on the defendant's right
    to remain silent, did not, taken individually, warrant reversal; nor did
    the claimed errors, taken cumulatively, require a new trial. [21-24]

COMPLAINT received and sworn to in the Fall River Divi-
sion of the District Court Department on October 13, 1987.

On appeal to the jury session of that court, the case was
tried before *John B. Leonard*, J.

*Woodrow Brown, Jr.*, for the defendant.

*Cynthia A. Vincent*, Assistant District Attorney, for the
Commonwealth.

GREENBERG, J. The defendant was convicted by a jury of
six in the District Court of operating a motor vehicle while
under the influence of intoxicating liquor. G. L. c. 90, § 24.[1]

---

[1]The judge sentenced the defendant to a term of two years in a house of
correction, ordered fifteen months to be served, and suspended the balance
with probation for five years. See G. L. c. 279, §§ 1, 1A.

The defendant alleges error in (1) the admission of statements made by the defendant during the performance of field sobriety tests, (2) the prosecutor's opening argument, (3) police testimony concerning the defendant's conduct during his apprehension, and (4) an officer's reference to the defendant's prior arrest record.[2] We affirm the conviction.

We recount the pertinent testimony as it developed at trial. Officer Arthur Tainsey of the Fall River police department testified that in the early morning hours of October 11, 1987, he and several other officers were in their cruisers at a parking lot just across the street from a nightclub in the downtown area. They observed from about 120 feet away a small, dark, "Datsun 280Z-type" vehicle pass by at a high rate of speed. Officer Tainsey and Sergeant Morrisette, traveling in separate cruisers, followed. They saw the vehicle stop at a red light. When the light turned green, the driver "spun his wheels" before making a right turn. The officers activated their blue lights, and the automobile pulled over to the side of the road. According to Officer Tainsey's testimony, there were three people in the car, the defendant, who was driving, and two passengers.[3] When the officers approached the defendant to ask him for his license and registration, they detected the odor of alcohol. They asked him to step outside. On the way to the rear of the vehicle, the defendant was unsteady on his feet. His speech was "running together and it wasn't very coherent." When Officer Tainsey asked the defendant whether he had consumed any alcohol, he responded, "No."

The officers brought the defendant over to the sidewalk and asked him to perform a number of field sobriety tests. First, Officer Tainsey asked him to walk a straight line, heel to toe, for a distance of ten to twelve feet. The defendant was unable to stay on the line, and staggered off to the side.

---

[2]An additional contention involving a videotape of the defendant's booking does not rise to the level of appellate argument. See Mass.R.A.P. 16 (a)(4), as amended, 367 Mass. 921 (1975).

[3]A defense witness testified that he was the only passenger in the car when it was stopped.

Tainsey next requested that the defendant recite the al-
phabet. He made it as far as the letter "P," stopped, and
could not continue. When the defendant was unable to per-
form the final test, a balancing and counting exercise, Officer
Tainsey formed the opinion that the defendant was under the
influence of alcohol and placed him under arrest.

Officer Tainsey described the defendant's demeanor in the
booking room at the police station as "very aggressive." He
was "swinging his arms" and had to be restrained a couple of
times. The booking officer, William Almeda, confirmed that
the defendant was unsteady on his feet and had to be assisted
to maintain his balance. He also detected a "very strong odor
of liquor emanating from [the defendant's] breath." When
the officer asked him routine booking questions, the defend-
ant "started to scream and yell" and refused to answer. His
speech was slurred.

The defendant called three witnesses who had been with
him for very brief periods earlier in the evening and who had
not observed the defendant drink anything or did not recall
any odor of alcohol. Steve Arruda, a passenger in the defend-
ant's car, testified that the defendant appeared clear-headed
during the ten or fifteen minutes he was in the car with the
defendant before they were pulled over and that the defend-
ant had had nothing to drink during this time. He acknowl-
edged that the defendant failed to complete the last two field
sobriety tests but stated that the defendant performed the
first test satisfactorily.

1. *The Miranda issue.* In *Miranda* v. *Arizona*, 384 U.S.
436, 444, 461 (1966), the Supreme Court formulated a series
of prophylactic rules designed to "secure the privilege against
self-incrimination" from overreaching and coercion during
custodial interrogation. Custodial interrogation has been de-
fined as "questioning initiated by law enforcement officers af-
ter a person has been taken into custody or otherwise de-
prived of his freedom of action in any significant way."
*Commonwealth* v. *Bryant*, 390 Mass. 729, 736 (1984), quot-
ing from *Miranda, supra* at 444. The defendant contends
that because his recitation of the alphabet and his number

counting during the field sobriety tests were incriminatory and resulted from custodial interrogation, the police were required to administer Miranda warnings before initiating their probe. We disagree.

Under both Federal and State constitutional analysis, persons temporarily detained pursuant to routine traffic stops are not in custody for purposes of *Miranda. Berkemer* v. *McCarty*, 468 U.S. 420, 440 (1984). *Pennsylvania* v. *Bruder*, 488 U.S. 9, 11 (1988). *Commonwealth* v. *McNelley*, 28 Mass. App. Ct. 985, 986 (1990). The *Berkemer* case, *supra*, sets out the logic behind the rule: the detention of a motorist pursuant to a routine traffic stop is presumptively temporary, as well as public. *Berkemer* v. *McCarty*, 468 U.S. at 435-442.[4] *Commonwealth* v. *McNelley*, 28 Mass. App. Ct. at 986.

The circumstances in this case substantially parallel those of the roadside questioning in *Berkemer* v. *McCarty*, *supra* at 435-442. The stop on the road was of brief duration,[5] see *id.* at 441; *Commonwealth* v. *Merritt*, 14 Mass. App. Ct. 601, 605-606 (1982), and it took place in the public view. *Berkemer* v. *McCarty*, *supra* at 442. *Commonwealth* v. *McNelley*, *supra* at 986, 987 (where the inquiry took place at 3:10 A.M. on a public street, no Miranda warnings were required). There were no other significant factors to suggest a coercive environment. Indeed, the defendant had two passengers (or at least one; see note 3, *supra*), presumably sympathetic witnesses. The fact that the defendant was not free to leave (at least until the performance of the field sobriety tests) did not render the interrogation custodial. *Id.* at 986. See *Commonwealth* v. *Podlaski*, 377 Mass. 339, 343 (1979). Because the defendant's freedom of action was not curtailed

---

[4] We note that there may be times when a detained motorist is treated in a way that "renders him 'in custody' for practical purposes." *Id.* at 440. In those circumstances, the motorist will be entitled to the "full panoply of protections prescribed by *Miranda.*" *Ibid.*

[5] Officer Tainsey testified on cross-examination that the stop of the defendant's vehicle took place at about 1:15 A.M. Officer Almeda testified that the defendant was brought into the police station for booking at 1:30 A.M.

to the degree associated with formal arrest, *Berkemer* v. *Mc-Carty*, 468 U.S. at 440,[6] we conclude that the encounter was not custodial. The defendant was not entitled to Miranda warnings prior to his performance of the field sobriety tests.[7]

In this case, we need not resolve the propriety of the officer's requiring the defendant to recite the alphabet, count numbers, and respond to questions regarding alcohol consumption because we have determined that the defendant was not subjected to a custodial interrogation. However, we do not discount the possibility that in future cases circumstances may arise which trigger the protections afforded by the Fifth Amendment of the United States Constitution. See *Pennsylvania* v. *Bruder*, 488 U.S. at 11 n.3.[8]

2. *Comments on the defendant's silence.* The defendant contends that certain statements contained in the prosecutor's opening argument and in the testimony of Officers Tainsey and Almeda represented prohibited comment on the defendant's right to remain silent and that the cumulative effect of the errors requires reversal and a new trial.

---

[6]The court in *Berkemer* (at 439) observed that "the usual traffic stop is more analogous to a so-called '*Terry* stop,' see *Terry* v. *Ohio*, 392 U.S. 1 (1968), than to a formal arrest." See *id.* at 437-439.

[7]We do not address any contention based on art. 12 of the Massachusetts Declaration of Rights. The defendant did not raise such a claim at trial, nor did he mention art. 12 in his brief in support of his motion for a new trial. Because the defendant failed to argue the State claim separately from the Federal claim, we need not reach it. See *Commonwealth* v. *Oakes*, 407 Mass. 92, 98-99 (1990).

[8]Roadside sobriety tests merely requiring a defendant to exhibit his physical coordination, or lack thereof, are not testimonial. See *Commonwealth* v. *Brennan*, 386 Mass. 772, 779 (1982); *Commonwealth* v. *Carey*, 26 Mass. App. Ct. 339, 340-341 (1988). However, "[w]henever a suspect is asked for a response requiring him to communicate an express or implied assertion of fact or belief, the suspect confronts the 'trilemma' of truth, falsity, or silence and hence the response (whether based on truth or falsity) contains a testimonial component." *Pennsylvania* v. *Muniz*, 496 U.S. 552, 597 (1990). Future challenges, then, should focus on the nature of the alleged custodial circumstances, and, if raised, on whether police field inquiries impermissibly reveal the defendant's thought processes. *Id.* at 590, 592-600 (where police compelled the defendant to calculate the date of his sixth birthday, his inability to do so was testimonial in nature).

a. *The prosecutor's opening.* Included in the prosecutor's opening was the following: "You're going to hear testimony from one other police officer who was present in the [booking] room . . . . He's going to describe the defendant's demeanor. . . . He's going to tell you exactly what he did in that booking room and describe his conduct, how he resisted the officers, wouldn't cooperate one bit in the booking process." At the conclusion of the argument, defense counsel moved for a mistrial or, alternatively, a curative instruction. He maintained that because the defendant was in custody at the booking room, had received the Miranda warnings, and was under no obligation to say anything, the prosecutor should not have alluded to the defendant's lack of "cooperation." We agree with the judge that the comment was "improper," but "not fatal."

As a general rule, counsel is "free to state in his opening anything that he expects to be able to prove by evidence." *Commonwealth* v. *Breese*, 381 Mass. 13, 15 (1980). The Commonwealth presented evidence of obstreperous behavior by the defendant during his booking such that he had to be restrained. He was described as "wild," "very aggressive," and as "swinging his arms." In these circumstances, the jury would not have interpreted the prosecutor's remark that the defendant "wouldn't cooperate one bit in the booking process" as suggesting that the defendant refused to answer questions during the booking; rather, it was much more likely understood by them as a comment on the defendant's general demeanor. See generally *Commonwealth* v. *Cunneen*, 389 Mass. 216, 223-224 (1983) (remark was "a vague and fleeting comment, not likely to influence, or even to seize the attention of the jury"). *Commonwealth* v. *Sherick*, 23 Mass. App. Ct. 338, 344-346, *S.C.*, 401 Mass. 302 (1987). In these circumstances, the judge did not err in denying the defendant's motion for a mistrial, and his subsequent request for a curative instruction. Compare *Commonwealth* v. *Crichlow*, 30 Mass. App. Ct. 901, 902-903 (1991).

b. *Testimony of police witnesses.* In his testimony on direct examination, Officer Almeda described the defendant's

behavior as "very, very wild at times" and stated that when he made inquiries of the defendant, "[the defendant] started to scream and yell [at him] and he refused to answer . . . any questions." When defense counsel moved to strike, the judge responded: "We'll strike the refusal to answer any questions. A defendant in a police situation such as this has certain rights that he need not answer questions. I'm only going to strike, however, the fact that he refused to answer certain questions."

Officer Tainsey testified that the defendant, upon being asked for arrest sheet information at the booking room, "wasn't very cooperative." The judge struck this testimony, stating that it was for the jury to decide. Shortly thereafter, the officer remarked that the police "had to take [the defendant's] information from the prior arrest card because he wouldn't give [them] the information." Defense counsel promptly moved to strike, and the judge delivered the contemporaneous instruction which appears in the margin.[9]

Because of their direct reference to the defendant's refusal to answer questions, the officers' statements were "reasonably susceptible of being interpreted as a comment on [the silence of the defendant]" and were, as such, improper. *Commonwealth* v. *Gouveia*, 371 Mass. 566, 571 (1976), quoting from *Commonwealth* v. *Domanski*, 332 Mass. 66, 69 (1954). Officer Tainsey's reference to the prior arrest record was particularly unfortunate because evidence of a defendant's prior criminal record is not generally admissible in a trial where the defendant does not take the stand. See *Commonwealth* v. *Weaver*, 400 Mass. 612, 620 (1987). However, we disagree with the defendant that the judge's instruction was inade-

---

[9] "Ladies and gentlemen, there was a reference by the officer to a prior arrest. That is totally improper for you to consider any background of this gentleman, for whatever reason, for whatever the arrest might have been. We don't know. You don't know. You are to decide this case on the evidence that is permissibly entered in this case and only what you hear here today. You cannot judge anybody on their past actions or what you might think their future actions might be. You are solemnly bound to decide this case on the evidence that I allow to go before you. And I am instructing you now that any reference to a prior arrest is improper for you to consider at all. I want you to understand that now. It's not part of this case."

quate to cure the prejudice to the defendant. The judge's instruction on the remark by Officer Tainsey was forceful, sufficiently so in our opinion to dissipate any prejudice. See *Commonwealth* v. *Cunneen*, 389 Mass. at 224. "Jurors are expected to follow instructions to disregard matters withdrawn from their consideration." *Commonwealth* v. *Helfant*, 398 Mass. 214, 228 (1986), quoting from *Commonwealth* v. *Cameron*, 385 Mass. 660, 668 (1982). Finally, the officers' passing comments were harmless beyond a reasonable doubt due to the strength of the evidence as to the defendant's intoxication. The jury had learned of the defendant's failure to perform three sobriety tests and were warranted in finding that his ability to drive had been impaired. They had heard testimony concerning his belligerent behavior at the police station and the incoherence of his speech. The predominant impression left with the jury was that the defendant was acting out in an acutely physical manner and not that he refused to answer booking questions. The defendant was not denied a fair trial. See *Commonwealth* v. *Morgan*, 369 Mass. 332, 340-341 (1975); *Commonwealth* v. *Weaver*, 400 Mass. at 620-621.

3. *Cumulative prejudice.* None of the asserted errors, taken individually, warrants reversal, nor do the claimed errors, taken cumulatively, require a new trial.

*Judgment affirmed.*

*Order denying motion for new trial affirmed.*