Connolly, J.
The defendant, Scott Van Houtin (“Van Houtin”) was charged with operating a motor vehicle under the influence of intoxicating liquor, in violation of G.L.c. 90, §24. Van Houtin has now moved to suppress the results of certain field sobriety tests that a police officer allegedly compelled him to perform without advising him that he had a right to refuse. Van Houtin argues that the evidence thus obtained violated his privilege against self-incrimination as protected by the federal and state constitutions and under Miranda v. Arizona, 384 U.S. 436 (1966).
For the reasons set forth below, the court ALLOWS the motion IN PART and DENIES the motion IN PART.
FINDINGS OF FACT
After conducting a hearing on the motion and considering the arguments and submissions of both parties, the court finds the following facts:
On the evening of September 21, 1994, Officer McNeill (“McNeill”) of the Salisbury Police Department was on duty in a patrol car in Salisbury Center. The square was well lit. At 11:50 p.m., McNeill observed a white Honda, which was being driven erratically, make a left turn in a jerking manner. As the officer followed for 150 yards, the car drifted left to right in its own travel lane.
Officer McNeill stopped the vehicle and asked the driver, whom he identified as the defendant, Scott Van Houtin, to show his license and registration. Van Houtin produced a valid driver’s license but could not locate his registration, which was, in fact, in his lap. McNeill detected a strong odor of alcohol; he also noticed that Van Houtin’s eyes were bloodshot.
After having him step out of the car, Officer McNeill asked Van Houtin, who appeared on the surface to be in good shape, to perform a series of tasks designed to test his sobriety. McNeill did not advise Van Houtin that he had a right to refuse to take the tests. Although there is some disagreement about which particular tests Van Houtin performed,[1] the court finds the following factual recitation, as given by Officer McNeill on the witness stand, to be credible: First, with his left hand on the car, Van Houtin took nine steps in a heel-to-toe manner, staggering to the right on the first step. Next, Van Houtin stood on one leg, moving his arms about as he did so. Finally, asked to recite the alphabet, Van Houtin could not complete the task, and his attempt was marked by slurred speech. Officer McNeill, who made his observations of Van Houtin standing three to four feet away, then arrested him for DUI (driving under the influence).
The Commonwealth proposes to introduce as evidence the manner in which Van Houtin performed on the three field sobriety tests he was given by Officer McNeill, viz., the heel-to-toe walk, the one-legged stand, and the recitation of the alphabet.[2] In opposition, Van Houtin has made a motion to suppress, arguing that, where McNeill “detained him by restraining his freedom of movement” (Defendant’s Memorandum at 1) and did not advise him of his Miranda[3] rights, and where Van Houtin did not knowingly and voluntarily waive those rights, such evidence would violate his privilege against self-incrimination as secured by the Fifth Amendment to the United States Constitution and by Article 12 of the Declaration of Rights of the Constitution of the Commonwealth.
RULINGS OF LAW
“Custodial Interrogation” and the Miranda Requirements
Whenever an individual is subjected to “custodial interrogation,”[4] he must be informed — before being questioned — that he has the right to remain silent, that any statements he makes may be used against him, and that he has the right to an attorney. Miranda v. Arizona, 384 U.S. 426, 443-44 (1966). If the Miranda requirements are not met, then a suspect’s statements are deemed involuntary as a matter of law and must be suppressed. Commonwealth v. Smith, 412 Mass. 823, 829-837 (1992). Even where the Miranda warnings have been given, however, statements must also be suppressed where a court finds that a defendant did not knowingly, willingly, and intelligently waive his rights. Commonwealth v. Tavares, 385 Mass. 140, 145 (1982), cert. denied, 457 U.S. 1137 (1982). The Commonwealth has the burden of proving the voluntariness of the waiver and any statements beyond a reasonable doubt. Commonwealth v. Smith, supra, 412 Mass, at 837; Commonwealth v. Day, 387 Mass. 915, 920-21 (1983).
In Commonwealth v. D’Agostino, 38 Mass.App.Ct. 206 (1995), the defendant refused to perform field sobriety tests.[5] Commonwealth v. D’Agostino, supra, 38 Mass.App.Ct. at 207. The court held that the facts surrounding the officers’ inquiries demonstrated that their questioning of the defendant was part of a temporary routine traffic stop and did not amount to “custodial investigation,” id. at 208, citing Berkemer v. McCarty, 468 U.S. 420, 440 (1984), where only a brief period of time had elapsed between the initial stop of the defendant’s car and the officers’ questions, and the encounter took place in the “public view” on the side of the roadway. Id., citing Commonwealth v. McNelly, *7 28 Mass.App.Ct. 985, 986-87 (1990) (where inquiry took place at 3:10 a.m. on public street, no Miranda warnings required); Commonwealth v. Ayre, 31 Mass.App.Ct. 17, 20 (1991); Commonwealth v. Smith, 35 Mass.App.Ct. 655, 657-58 (1993). The court therefore concluded that the officers’ request that the defendant perform the field sobriety tests did not, in the circumstances, subject the defendant to “custodial interrogation” or entitle him at that point to Miranda warnings. Id., citing Commonwealth v. Ayre, supra, 31 Mass.App.Ct. at 20-21.
In Commonwealth v. Ayre, the court rejected the defendant’s argument that, because his recitation of the alphabet and his number counting during field sobriety tests were incriminating and resulted from custodial interrogation, the police were required to administer Miranda warnings before initiating their probe. Commonwealth v. Ayre, supra, 31 Mass.App.Ct. at 19-20. The court found that, under both the federal and state constitutions, persons temporarily detained pursuant to routine traffic stops are not in custody for purposes of Miranda. Id., citing Pennsylvania v. Bruder, 488 U.S. 9, 11 (1988); Berkemer v. McCarty, supra, 468 U.S. 420, 435-42 (detention of motorist pursuant to routine traffic stop is presumptively temporary, as well as public; “there may be times,” however, when detained motorist is treated in way that “renders him ‘in custody’ for practical purposes,” in which circumstances “the motorist will be entitled to the “full panoply of protections prescribed by Miranda!’)', see also Commonwealth v. McNelly, supra, 28 Mass.App.Ct. at 985-86.
In Ayre, the roadside stop was brief, the police inquiries were conducted in public view, and there were no other significant factors to suggest a coercive environment. The fact that the defendant was not free to leave (at least until the performance of the field sobriety tests) did not render the interrogation “custodial.” Commonwealth v. Ayre, supra, 31 Mass.App.Ct. at 20, citing Commonwealth v. McNelly, supra, 28 Mass.App.Ct. at 986; Commonwealth v. Podlaski, 377 Mass. 339, 343 (1979). Because the defendant’s freedom of action was not curtailed to a degree associated with formal arrest, the court concluded that the encounter was not custodial, and the defendant was not entitled to Miranda warnings prior to his performance of the field sobriety tests. Commonwealth v. Ayre, supra, 31 Mass.App.Ct. at 21.[6]
In the instant case, the court finds, as an initial matter, that Van Houtin was being “interrogated” when he was asked to perform the field sobriety tests, which the police certainly knew were “reasonably likely to elicit an incriminating response.” See Rhode Island v. Innis, supra, 446 U.S. at 301-02. Moreover, the court concludes that this was not a “routine traffic stop" and that Van Houtin was “in custody” at the time he was, in his words, “ordered” to perform the tests. As noted ante, the determination whether an interrogation is “custodial” requires a court to answer “what is essentially a subjective inquiry — whether, from the point of view of the person being questioned, the interrogation took place in a coercive environment — by reference to objective indicia.” Commonwealth v. Bryant, supra, 390 Mass. at 736. While there is nothing in the evidence presented to indicate that the time between the Officer McNeill’s initial stop of the Van Houtin’s car and his questioning of Van Houtin was anything more than a brief period or that the encounter took place out of “public view,” see Berkemer v. McCarty, supra, 468 U.S. at 440; Commonwealth v. McNelly, supra, 28 Mass.App.Ct. at 986-87; Commonwealth v. Ayre, supra, 31 Mass.App.Ct. at 20, here, where Officer McNeill’s investigation had clearly begun to focus on Van Houtin; where his observations (including Van Houtin’s erratic driving, strong odor of alcohol and bloodshot eyes) were, in themselves, sufficient to establish probable cause to arrest Van Houtin for driving under the influence; and where Van Houtin was clearly not free to leave, the court, examining the “totality of the circumstances,” Commonwealth v. Mahnke, supra, 368 Mass, at 682, concludes that a reasonable person in Van Houtin’s situation would have found the environment coercive.
The Privilege Against Self-Incrimination Under the United States Constitution
The Self-Incrimination Clause of the Fifth Amendment[7] provides that no “person ... shall be compelled in any criminal case to be a witness against himself.” Pennsylvania v. Muniz, 496 U.S. 582, 588 (1990). The privilege does not protect a suspect from being compelled by the State to produce “real or physical evidence.” Id. at 589, citing Schmerber v. California, 384 U.S. 757, 764 (1966).[8] Rather, it “protects an accused only from being compelled to testify against himself, or otherwise provide the State with evidence of a testimonial or communicative nature.” Schmerber v. California, supra, 384 U.S. at 761.
“[I]n order to be testimonial, an accused’s communication must itself, explicitly or implicitly, relate a factual assertion or disclose information. Only then is a person compelled to be a ‘witness’ against himself.” Pennsylvania v. Muniz, supra, 496 U.S. at 589, quoting Doe v. United States, 487 U.S. 201, 210 (1988).[9]
In Pennsylvania v. Muniz, supra, the Supreme Court held that compelling an arrested drunk-driving suspect to state the date of his sixth birthday constituted a “testimonial” response, and that, because the suspect had not been read his Miranda rights, admitting the statement as evidence at trial violated the suspect’s Fifth Amendment privilege against self-incrimination. The Court observed that simply to require a suspect to reveal the physical manner in which he articulated words, like requiring him to reveal the physical properties of the sound of his voice by reading a transcript, does not, without more, compel him to provide a testimonial response for purposes of the *8 privilege. In Muniz itself, however, it was not merely because the slurred nature of his speech was incriminating that defendant Muniz’s answers were rendered inadmissible by Miranda. The physical inability to articulate words in a clear manner due to a lack of muscular coordination was not itself a testimonial component of Muniz’s responses. Id. at 591. Rather, Muniz’s response to the sixth-birthday question was incriminating not only because of the manner of his delivery but also because the content of his answer supported an inference that his mental state was confused.[10] Id. at 590.[11] Although the “fact” thus inferred concerned the physical status of Muniz’s brain, that merely described the way in which the inference was incriminating, and the “correct question for present purposes” was whether the incriminating inference of mental confusion was drawn from a testimonial act or from physical evidence, i.e., whether Muniz’s response to the sixth-birthday question that gave rise to the inference was testimonial in nature. Id. at 593-95, citations omitted.
Whenever a suspect is asked for a response requiring him to communicate an express or implied assertion of fact or belief, the suspect confronts the “trilemma” of truth, falsity, or silence,[12] and hence the response (whether based on truth or falsity) contains a testimonial component. Id. at 597. The cases upholding compelled writing and voice exemplars do not involve situations in which suspects were asked to communicate any personal beliefs or knowledge of facts. Id. “[A] mere handwriting exemplar, in contrast to the content of what is written, like the voice or body itself, is an identifying physical characteristic outside [the privilege’s] protection.” Id. at 598, quoting Gilbert v. California, 388 U.S. 263, 266-67 (1967) (emphasis in Muniz). Had the suspect been asked to provide a writing sample of his own composition, the content of the writing would have reflected his assertion of facts or beliefs and hence would have been testimonial. Pennsylvania v. Muniz, supra, 496 U.S at 598. The sixth-birthday question required a testimonial response. Id. at 599. Muniz was confronted with the trilemma. The content of his truthful answer supported an inference that his mental faculties were impaired, since that answer [viz., the assertion that he did not know the date of his sixth birthday) was not what the trier of fact might reasonably have expected a lucid person to provide (i.e., the correct date). Hence the incriminating inference of impaired mental faculties stemmed not just from the fact that Muniz slurred his response but also from a testimonial aspect of that response. Id. at 599.[13]
In Commonwealth v. Brennan, 386 Mass. 772 (1982), the Supreme Judicial Court, considering the Fifth Amendment privilege, held that field sobriety tests do not involve testimonial or communicative evidence, which, the Court noted, the United States Supreme Court “has consistently indicated ... is that which reveals the subjective knowledge or thought processes of the subject.” Commonwealth v. Brennan, supra, 386 Mass, at 777. “Testimonial” evidence, for the puipose of Fifth Amendment analysis, is evidence which reveals the subject’s knowledge or thoughts concerning some fact. Id. at 778. The court concluded that, since field sobriefy tests are not intended to reveal any thoughts or knowledge of the subject" but “only force him to exhibit his physical coordination, or lack thereof, for observation by a police officer, such tests ”do not elicit testimonial or communicative evidence and therefore do not trigger the protections afforded by the Fifth Amendment." Id. at 779. See also Commonwealth v. Ayre, supra, 31 Mass.App.Ct. 17, 21 n.8 (1991)[14] (Roadside sobriefy tests merely requiring a defendant to exhibit his physical coordination, or lack thereof, are not testimonial. However, “(wjhenever a suspect is asked for a response requiring him to communicate an express or implied assertion of fact or belief, . . . the response (whether based on truth or falsify) contains a testimonial component . . . Future challenges, then, should focus on the nature of the alleged custodial circumstances, and, if raised, on whether police field inquiries impermissibly reveal the defendant’s thought processes” (citations omitted)).
The Privilege Against Self-Incrimination Under Article 12
Article 12 of the Massachusetts Declaration of Rights provides in relevant part that “(n]o subject shall . . . be compelled to accuse, or furnish evidence against himself.”[15] The Supreme Judicial Court has stated that, “(ajlthough the privilege against self-incrimination under art. 12 is broad, it protects only against the compulsion of communications or testimony and not against the production of real or physical evidence such as fingerprints, photographs, lineups, blood samples, handwriting, and voice exemplars.” Commonwealth v. McGrail, 419 Mass. 774, 777 (1995), citing Commonwealth v. Brennan, 386 Mass. 772, 776, 780 (1982). “By contrast, testimonial evidence which reveals a person’s knowledge or thoughts concerning some fact is protected.” Commonwealth v. McGrail, 419 Mass. 774, 777 (1995), citing Commonwealth v. Brennan, supra, 386 Mass, at 778.
In Commonwealth v. McGrail, the Court held that a defendant’s refusal to submit to a field sobriefy test constituted “testimonial or communicative” evidence, since such refusal evidence “would be relevant to show that the defendant believed that the test results would tend to incriminate him,” thereby “in essence, con-stitut[ing] testimony concerning the defendant’s belief on a central issue to the case.” Commonwealth v. McGrail, supra, 419 Mass. at 778; see also Opinion of the Justices, supra, 412 Mass, at 1211 (“[I]f refusal evidence has relevance to any issue essential to the prosecution’s case, it is because it is reflective of the knowledge, understanding, and thought process of the accused”). The Court in McGrail also found that such refusal evidence can be said to be compelled, basing *9 its argument on Opinion of the Justices, supra, 412 Mass. 1201, in which the Court had considered the constitutionality of a bill to make admissible evidence of a person’s refusal to take a breathalyzer test. Commonwealth v. McGrail, supra, 419 Mass. at 778-79. In Opinion, the Justices had concluded that to allow the admission of such refusal evidence would place an accused in a "Catch-22" situation: He could "take the test and perhaps produce potentially incriminating real evidence; [or he could] refuse and have adverse testimonial evidence used against him at trial." Opinion of the Justices, supra, 412 Mass. at 1211 (emphasis added). The Court therefore advised the Legislature that the proposed statute would be unconstitutional under Article 12 because it would compel a defendant to furnish self-incriminating evidence. Id.; Commonwealth v. McGrail, supra, 419 Mass. at 779, 780 (1982). Finding “very little difference” between evidence of refusal to take a breathalyzer test and evidence of refusal to take a field sobriety test, the McGrail court concluded that a defendant’s refusal to take a field sobriety test was likewise inadmissible as compelled testimonial evidence.
In the instant case, what the Commonwealth proposes to introduce is evidence not of a refusal by Van Houtin to take the field sobriety tests but rather of how he performed on the tests he actually took. Refusal evidence and test results “logically” do not “fall[ ] in the same category.” Opinion of the Justices, 412 Mass. 1201, 1209 (1992). Refusal evidence, “if offered to show that the person had doubts about his ability to pass the test, would be testimonial,” while “test results are not testimonial.” Id. In Commonwealth v. Brennan, supra, the Supreme Judicial Court “conclude[d] that art. 12 of the Declaration of Rights applies only to evidence of a testimonial or communicative nature, and that neither a breathalyzer nor field sobriety tests are communicative to the extent necessary to evoke the privilege.” Commonwealth v. Brennan, supra, 386 Mass, at 783. The Court specifically ruled that “[f]ield sobriety tests are dexterity tests . . . [and] because the test results are based on the subject’s loss of coordination, rather than his subjective knowledge of the crime, the test results constitute real or physical evidence.” Commonwealth v. McGrail, supra, 419 Mass, at 777 n.7, citing Commonwealth v. Brennan, supra, 386 Mass, at 779, 783; see also Commonwealth v. Carey, 26 Mass.App.Ct. 339, 340-41 (1988) (like fingerprinting, photographing, measuring, or asking suspect to stand, walk, or talk, sobriety test requires that suspect allow himself to be observed; it does not ask him to reveal his mind); see also Commonwealth v. Mahoney, 400 Mass. 524, 528 (1987).
Here, the challenged evidence comprises the results of three field sobriety tests. Van Houtin’s performance on two of those tests (the heel-to-toe walk and the one-legged stand) is clearly admissible, since it constitutes nothing more than “real” or “physical” evidence, the compulsion of which neither the Fifth Amendment to the Federal Constitution nor Article 12 to our own Declaration of Rights protects against. The test in which Van Houtin was required to recite the alphabet is another matter, however, since his inability to do so “reveal[ed his] subjective knowledge or thought processes.” Commonwealth v. Brennan, supra, 386 Mass, at 777. Although Brennan characterized all sobriety tests as non-testimonial, i.e„ not “communicative" enough to evoke the privilege against self-incrimination, the tests contemplated by Brennan were those “not intended to reveal any thoughts or knowledge of the subject” but “only force him to exhibit his physical coordination,” i.e., “dexterity tests,” the results of which constitute “real” or “physical” evidence because they are “based on the subject’s loss of coordination, rather than his subjective knowledge of the crime.” Here, the sobriety test at issue — reciting the alphabet — is clearly not a “dexterity” test that would reveal a “loss of coordination.” On the other hand, neither is it based on “subjective knowledge of the crime.” At the very least, however, an inability to recite the alphabet passes muster as “testimonial communication” according to the standards enunciated by the United States Supreme Court,[16] where, “explicitly or implicitly, it relate[s] a factual assertion or disclose[s] information,” viz., a confused or impaired state of mind. Like evidence of a suspect’s refusal to take a breathalyzer or sobriety test, an inability to recite the alphabet is “reflective of the knowledge, understanding, and thought process of the accused.” Opinion of the Justices, supra, 412 Mass, at 1211. The distinction between the type of sobriety tests whose results are admissible and those that are not was made explicit by the Supreme Judicial Court in Commonwealth v. Ayre.[17] Sobriety tests merely requiring a defendant to exhibit his physical coordination, or lack thereof, are not testimonial, but whenever a suspect is asked for a response requiring him to communicate an express or implied assertion of fact or belief, the response (whether based on truth or falsity) contains a testimonial component.
Like the sixth-birthday question in Pennsylvania v. Muniz, supra, the alphabet test here required a testimonial response.[18] Like Muniz’s truthful answer that he could not correctly state what the date of his sixth birthday was, Van Houtin’s truthfully incorrect recitation of the alphabet supported an inference that his mental faculties were impaired. That incriminating inference of impaired mental faculties was based not only on the fact that Van Houtin, like Muniz, slurred his response but also on a testimonial aspect of that response, namely, the revelation of the then-existing contents of his mind. In a Florida case, Allred v. State, 622 So.2d 984 (Fla. 1993), one defendant, stopped for a driving infraction, was not advised of his Miranda rights before being asked to recite the alphabet from “c” to “w” and to count from 1001 to 1030; he performed both tasks imperfectly. Id. at 985. A second *10 defendant, also stopped for a driving infraction and suspected of driving under the influence of alcohol, was asked to recite the complete alphabet and, later, to recite part of the alphabet while standing on one leg; he, too, performed imperfectly. Id. Following Muniz,[19] the court held that “[a] reasonable person would conclude that the request to recite, out of the ordinary sequence’ letters and numbers was designed to lead to an incriminating response” and that “[flail-ure to accurately recite the alphabet ‘discloses information’ beyond possible slurred speech; it is the content (incorrect recitation) of the speech that is being introduced, rather than merely the manner (slurring) of speech.” Id. at 987 (emphasis in original). While the argument can be made that the task that Van Houtin was compelled to perform — reciting the alphabet in the ordinary sequence — was even less “content-oriented” than reciting the alphabet out of the ordinary sequence (as in Allred), because Van Houtin’s response reflected his knowledge, understanding, and thought processes, it constituted testimonial evidence sufficiently communicative to trigger the protections against self-incrimination afforded by both the Fifth Amendment and Article 12.
ORDER
For the reasons discussed above, it is hereby ORDERED that the defendant’s motion to suppress be DENIED to the extent that evidence of his performance on the heel-to-toe walk and the one-legged stand tests is admissible. The defendant’s motion is ALLOWED to the extent that evidence of his performance on the alphabet recitation test is inadmissible.

According to an affidavit Van Houtin filed in support of his motion to suppress, Officer McNeill “ordered” him to recite the alphabet and to stand on one leg while counting from one to twenty and back to zero.

Although Van Houtin has moved to suppress the “numbers test,” the Commonwealth has not announced any intention to offer the results of any such test as evidence.

Miranda v. Arizona, 384 U.S. 436 (1966).

I.e., when an individual, having been taken into custody or in any significant way deprived of freedom of action, is subjected to questioning initiated by a law enforcement officer. Miranda v. Arizona, supra, 384 U.S. at 444; Commonwealth v. Bryant, 390 Mass. 729, 736-37 (1984). “Interrogation” includes any words or actions that the police know or should know are reasonably likely to elicit an incriminating response. Rhode Island v. Innis, 446 U.S. 291, 301-02 (1980). In determining whether an interrogation was “custodial,” a court must answer “what is essentially a subjective inquiry — whether, from the point of view of the person being questioned, the interrogation took place in a coercive environment — by reference to objective indicia." Commonwealth v. Bryant, supra, 390 Mass, at 736. Those criteria include: where the questioning took place; whether the police investigation had begun to focus on the suspect, including whether there was probable cause to arrest him or her; whether the questioning was aggressive or informal; and whether the suspect was free to leave or to ask the police to leave. Breese v. Commonwealth, 415 Mass. 249, 255 (1993); Commonwealth v. Bryant, supra, 390 Mass. at 737. Examining the “totality of the circumstances,” Commonwealth v. Mahnke, 368 Mass. 662, 682 (1975), cert. denied, 425 U.S. 909, a court may conclude that a reasonable person in the defendant’s situation would have found the environment coercive.

The arresting officers testified that the defendant was unsteady on his feet, his eyes were “glossy” [sic] and watery, his breath had a strong odor of alcohol, and his speech was slurred; and he was verbally abusive and belligerent, leading the officers as well as an emergency medical technician to form the opinion that the defendant was intoxicated. Commonwealth v. D'Agostino, supra, 38 Mass.App.Ct. at 207.

After noting that it had no need to rule on the propriety of the officers’ requiring that the defendant recite the alphabet and count numbers because it had determined that the defendant was not subjected to custodial interrogation, the Ayre court remarked, “However, we do not discount the possibility that in future the cases circumstances may arise which trigger the protections afforded by the Fifth Amendment.” Commonwealth v. Ayre, supra, 31 Mass.App.Ct. at21, citing Pennsylvania v. Bruder, 488 U.S. at 11 n. 3.

In Malloy v. Hogan, 378 U.S. 1 (1964), the Court held that the privilege against self-incrimination applied to the States through the Fourteenth Amendment.

therefore, a suspect or accused may be compelled to be the source of “real or physical evidence,” e.g., forced blood samples (Schmerber); participation in a lineup and/or repetition of a phrase provided by police to allow witnesses to look at and listen to the suspect (United States v. Wade, 388 U.S. 218, 222-23 (1967)); handwriting exemplars (Gilbert v. California, 388 U.S. 263, 266-67 (1967)); reading a transcript to provide a voice exemplar (United States v. Dionisio, 410 U.S. 1 (1973)). Pennsylvania v. Muniz, supra, 496 U.S. at 591-92.

In Doe v. United States, 487 U.S. 201, 210 (1988), the Supreme Court held that being compelled to sign a consent form waiving a privacy interest in foreign bank records does not violate a person's Fifth Amendment privilege, since such an authorization contains no factual assertions; if the government obtains bank records as a result, the only factual assertions it will have are the bank’s; because the consent form spoke in the hypothetical, it neither communicated any factual assertions, implicit or explicit, nor conveyed any information to the government.

Mental confusion was an element of the Pennsylvania offense with which Muniz was charged.

The Court did not address the question whether the recitation of numbers during custodial interrogation was testimonial within the meaning of the privilege because, “as Muniz counted accurately!,] . . . his verbal response to this instruction [to count while doing the ’’one leg stand" test] was not incriminating except to the extent that it exhibited a tendency to slur words, which we have already explained is a nontestimonial component of his response." Pennsylvania v. Muniz, 496 U.S. at 603 n. 17.

The inherently coercive environment created by custodial interrogation precludes the option of remaining silent. Pennsylvania v. Muniz, supra, 496 U. S at 598. During custodial interrogation, the pressure on the suspect to respond flows from the inherently compelling pressures that work to undermine the individual’s will to resist and to compel him to speak where he would not otherwise do so freely. Id. at 596-97 n. 10, citing Miranda v. Arizona, supra, 384 U.S. at 467.

The Court characterized the prosecution’s protest that it had no investigatory interest in the actual date of Muniz’s sixth birthday as “inapposite,” noting that the “critical point is that [it did] halve] an investigatory interest in Muniz’s assertion of belief that was communicated by his answer to the question,” i.e., it “may not have cared about the correct answer, but it cared about Muniz’s answer. The incriminating inference stems from the then-existing contents of Muniz’s mind as evidenced by his assertion of his knowledge at that time.” Id. at 599 n. 13 (emphasis in original). See also *11 Commonwealth v. Woods, 419 Mass. 366, 373 (1995) (although booking officer had no investigatory purpose in asking arrestee about his employment, the content of arrestee’s response might be incriminating).

In Commonwealth v. Ay re, which was decided under the Fifth Amendment because the defendant in that case did not raise any claims based on Article 12, the court did not reach the question of the propriety of an officer’s requiring a suspect to (inter alia) recite the alphabet, since, as noted ante, the court found that the defendant was not subjected to “custodial interrogation." Commonwealth v. Ayre, supra. 31 Mass.App. at 21 n. 7.

Article 12 “requires a broader interpretation than that of the Fifth Amendment.” Opinion of the Justices, 412 Mass. 1201, 1210 (1992), quoting Attorney Gen. v. Colleton, 387 Mass. 790, 796 (1982). “[A] witness cannot be compelled to produce records not protected by the Fifth Amendment because ‘the act of production, quite apart from the content of that which is produced,’ is in itself communicative, and, therefore, information that is reflective of the knowledge, understanding, and thoughts of a witness within the ambit of art. 12. Commonwealth v. Doe, 405 Mass. 676, 679 (1989); Commonwealth v. Hughes, 380 Mass. 583, cert. denied, 449 U.S.900 (1980).

Pennsylvania v. Muniz, supra, 496 U.S. at 589, quoting Doe v. United States, 487 U.S. 201, 210 (1988).

Supra, 31 Mass.App.Ct. 17, 21 n. 8 (1991).

As noted ante, the Muniz court did not reach the question whether another sobriety test conducted in that case, viz., requiring Muniz to count from one to twenty, was testimonial, since Muniz’s counting was correct and therefore not incriminating (except to the extent that it was slurred — a noritesttmonial component of the response).

The Court rejected an earlier Florida state case, Cortina v. State, 599 So.2d 728 (Fla.2d DCA 1992), which had distinguished Muniz holding that compelling a defendant to recite the (entire) alphabet did not violate the Fifth Amendment because “recitation of the alphabet — something most people would do reflexively — is even less content-oriented than trying to figure a specific date... Whereas one conceivably could be motivated to lie about his birthdate, the order of the alphabet is not susceptible to prevarication or alteration for ulterior motive.” Cortino v. State, 599 So.2d at 729-30.